■ In the Matter of PURE AIR AND WATER, INC. OF CHEMUNG COUNTY, Appellant, v DONALD DAVIDSEN, as Commissioner of Agriculture and Markets, et al., Respondents. [668 NYS2d 248] —White, J. Appeal from a judgment of the Supreme Court (Teresi, J.), entered September 25, 1996 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review an advisory opinion of respondent Commissioner of Agriculture and Markets.

Respondent Trengo Hog Partnership owns and operates a 166-acre farm in the Town of Chemung, Chemung County, on which it raises approximately 1,000 pigs. In February 1995, Trengo, pursuant to the State's Right to Farm Law (Agriculture and Markets Law § 308), requested an opinion from respondent Commissioner of Agriculture and Markets (hereinafter the Commissioner) regarding the soundness of its manure management program. Under this program, the manure produced by the pigs is stored in a large concrete pit which is emptied at certain intervals, with the manure being spread upon and incorporated into the farm's crop land in accordance with a Nutrient Management Plan (hereinafter the Plan) developed for Trengo by the US Department of Agriculture's Natural Resource Conservation Service. The Commissioner conducted an investigation of the program that resulted in an opinion that Trengo's manure storage and application practices were sound. Petitioner, a not-for-profit corporation representing nearby residents of Trengo's farm, challenged the opinion in this CPLR article 78 proceeding. Supreme Court rejected the challenge and dismissed the petition, giving rise to this appeal.[1]

The operative feature of the Right to Farm Law is that, if

---

1. Although the petition raises issues regarding air quality, our consideration is limited to water quality issues since such issues are the only ones encompassed in the Commissioner's opinion.

the Commissioner issues an opinion that a particular agricultural practice is sound, then such practice shall not constitute a private nuisance in an action brought by a private party (Agriculture and Markets Law § 308 [3]).[2] Petitioner contends that the statute is unconstitutional because it takes away the common-law right to sue for a private nuisance. We need not consider this argument as it was not raised in the petition before Supreme Court (*see, Matter of Alcott Staff Leasing v New York Compensation Ins. Rating Bd.*, 224 AD2d 54, 58).

Petitioner further contends that the statute offends the Due Process Clause because it does not provide for notice and a hearing. To succeed on a claim of deprivation of procedural due process, petitioners must establish that State action deprived them of a protected property or liberty interest (*see, Mathews v Eldridge*, 424 US 319, 332). As the Right to Farm Law does not implicate any liberty interest, our concern is whether it affects a property interest. The 14th Amendment's procedural protection of property safeguards specific benefits and entitlements persons have acquired (*see, Board of Regents v Roth*, 408 US 564, 576-577). Here, petitioner identifies the property interest as the right to have a court determine the merits of a private nuisance suit. This does not constitute a due process protected interest since a person does not have a vested interest in any rule of the common law (*see, Montgomery v Daniels*, 38 NY2d 41, 56-57). Thus, petitioner's due process argument fails.

Petitioner faults the Commissioner for his failure to comply with the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA). Whether such compliance was required depends upon whether the issuance of an opinion under the Right to Farm Law is an "action" within the meaning of SEQRA and its implementing regulations (*see*, ECL 8-0105 [4]; 6 NYCRR 617.2 [b]). Petitioner contends that it is because the opinion gave Trengo "permission" or "entitlement" to create a private nuisance. Petitioner misinterprets the scope of the opinion. It was not a license or permit to act since Trengo could and, in fact, did undertake the manure management program without first having to obtain authorization from the Commissioner; rather the opinion was merely an assessment of an agricultural practice. Therefore, its issuance was not an "action" within the meaning of SEQRA. Moreover, even if deemed an action, SEQRA exempts agricultural farm management prac-

---

2. As the Commissioner points out, the preclusive effect of an opinion continues only so long as the agricultural practice conforms to the description of the practice in the opinion.

tices from review (6 NYCRR 617.5 [a], [c] [3]). For these reasons, compliance with SEQRA in this instance was not required.

We now address the issue of whether the Commissioner's opinion was arbitrary and capricious. To properly fulfill his responsibilities under the Right to Farm Law, the Commissioner must accommodate two distinct governmental policies—the promotion of agriculture and the protection of the environment—policies that now oftentimes conflict as new technologies and methodologies transform agriculture. To reach a proper accommodation, the Commissioner does not have to consider every conceivable environmental impact; rather he should analyze and assess those impacts that can be reasonably anticipated to flow from the particular agricultural practice.

In this instance, the record discloses that Matthew Brower, an Associate Environmental Analyst in the Department of Agriculture and Markets, conducted an investigation of Trengo's manure management practices that included, *inter alia,* a site review, discussions with two neighbors who expressed concerns about water quality and consultations with the person who prepared the Plan and the Director of Environmental Health for the Chemung County Department of Health. This individual, between March 17, 1995 and April 10, 1995, took samples of water from 11 wells in the vicinity of the Trengo farm. Tests on these samples showed that only one well exhibited high nitrate levels; however, a large horse manure pile was located within 30 feet of the well. After the pile was moved, subsequent testing revealed a lower nitrate level which led to the conclusion that the higher nitrate level detected on the first test was due to the manure pile and not to the Trengo farm. Brower also contacted the Department of Environmental Conservation (hereinafter DEC), which advised him that there was no information in its files pertaining to water quality violations at the Trengo farm. Based on this record, the Commissioner concluded that the off-farm concern regarding water quality could not be attributed to the Trengo farm.

Petitioner maintains that the Commissioner's determination is deficient because he failed to seek DEC review of the impact of Trengo's practices on water quality and failed to test surface waters or obtain other input concerning the quality of the ground and surface waters in the area. Given the absence of evidence of any degradation of water quality in the neighboring wells—the most likely barometer of the presence of pollutants—and the fact that DEC had no record of water quality

violations, we do not accept this contention. Furthermore, we are required to give deference to an agency's determination that concerns an area involving its authority, expertise and experience (*see, Matter of Schenectady Police Benevolent Assn. v New York State Publ. Empl. Relations Bd.*, 85 NY2d 480, 485; *Williamsburg Around the Bridge Block Assn. v Giuliani*, 223 AD2d 64, 68). We further note that the Right to Farm Law does not contemplate the Commissioner performing independent tests; instead it envisions, as was done here, that he will arrive at his determination in consultation with the appropriate State agencies (*see*, Agriculture and Markets Law § 308 [1] [b]). For these reasons, we find that the Commissioner reached a determination in accordance with his responsibilities that is fully supported by facts in the record. Therefore, it cannot be deemed arbitrary or capricious (*see, Matter of Pell v Board of Educ.*, 34 NY2d 222, 231).

Cardona, P. J., Mercure, Crew III and Spain, JJ., concur. Ordered that the judgment is affirmed, without costs.