[676 NYS2d 237]

ROBERT L. SCHULZ et al., Appellants, v NEW YORK STATE LEGISLATURE et al., Respondents.

Third Department, July 30, 1998

### APPEARANCES OF COUNSEL

*Robert L. Schulz, pro se,* Queensbury, and for others, appellants.

*Dennis C. Vacco, Attorney-General,* Albany (*Andrew D. Bing* of counsel), for the New York Legislature and others, respondents.

*Hawkins, Delafield & Wood,* New York City (*W. Cullen Mac-Donald* of counsel), for New York City Transitional Finance Authority, respondent.

*Michael D. Hess, Corporation Counsel,* New York City (*Ellen Ravitch* of counsel), for City of New York, respondent.

### OPINION OF THE COURT

CREW III, J.

Pursuant to Laws of 1997 (ch 16, § 2), defendant State

Legislature amended Public Authorities Law article 8 and added a new title 33, entitled the New York City Transitional Finance Authority Act ([hereinafter the Act] *see*, Public Authorities Law § 2799-aa). The Act provides for the creation of the New York City Transitional Finance Authority (hereinafter the Authority), a public benefit corporation, which, under certain specified conditions, is authorized to issue bonds to fund capital improvement projects in New York City (*see*, Public Authorities Law §§ 2799-cc, 2799-gg).

Briefly, upon a declaration of need by the Mayor of New York City, the Mayor is to request that the Authority provide financing in accordance with the provisions of Public Authorities Law, article 8, title 33 (*see*, Public Authorities Law § 2799-ff [4]). Once the Authority determines, based upon the submissions tendered by the Mayor, that a capital financing need exists, the Authority is empowered to enter into agreements with the City to finance the relevant improvement project (*see*, Public Authorities Law § 2799-ff [5], [6]). To that end, the Act expressly provides that "[s]uch agreements shall not constitute indebtedness of the city for purposes of section 20.00 of the local finance law or any constitutional or statutory limitation" (Public Authorities Law § 2799-ff [5] [a]), nor shall the Authority's revenues be deemed funds of the City (*see*, Public Authorities Law § 2799-ff [5] [b]).

The Authority is authorized to issue bonds, notes or other obligations to pay for the cost of such improvement projects, with the aggregate principal amount not to exceed $7.5 billion (*see*, Public Authorities Law § 2799-gg [1]). In this regard, Public Authorities Law § 2799-gg (10) provides, in relevant part, as follows: "The bonds or other obligations of the authority shall not be a debt of either the state or the city, and neither the state nor the city shall be liable thereon, nor shall they be payable out of any funds other than those of the authority; and such bonds shall contain on the face thereof a statement to such effect." Funds or resources of the Authority may be derived from a variety of sources (*see*, Public Authorities Law § 2799-hh [1]) including, insofar as is relevant to this appeal, payments made to the Authority by defendant Comptroller, which, in turn, stem from two sources—the personal income tax imposed upon City residents and collected by the Comptroller pursuant to Tax Law § 1313, and "alternative revenues", defined by Public Authorities Law § 2799-bb (1) as sales and compensating use taxes that the City is authorized to impose

pursuant to Tax Law §§ 1107 and 1210. A review of Public Authorities Law §§ 2799-hh and 2799-ii reveals that the primary resource for the Authority will be the aforementioned personal income taxes, with the Comptroller to make a payment from alternative revenues only in the event that the City income tax revenues are projected to be insufficient to meet a specified level of debt service on the bonds. Public Authorities Law § 2799-ii further provides that nothing contained therein "shall be deemed to restrict the right of the state to amend, modify, repeal or otherwise alter statutes imposing or relating to the taxes payable to the authority pursuant to [Tax Law § 1313]", nor "to obligate the state to make any additional payments or impose any taxes to satisfy the debt service obligations of the authority".

Plaintiffs Robert L. Schulz and Gary T. Loughrey commenced this declaratory judgment action against the Legislature, the Speaker of the Assembly, the Senate Majority Leader and the Governor (hereinafter collectively referred to as the State defendants) seeking a declaration that the Act and State Finance Law § 123-b (1) are unconstitutional. Following the filing of the State defendants' answer and initial motion to dismiss and for summary judgment, an amended complaint was filed adding Mark N. Axinn, Bradford R. Arter and James B. Strawhorn as plaintiffs and the Comptroller as a defendant. An answer was submitted on behalf of the State defendants (now including the Comptroller) and the prior motion seeking dismissal and/or summary judgment was renewed. Thereafter, Supreme Court converted the State defendants' motion to dismiss into a motion for summary judgment and permitted defendants City of New York and the Authority (hereinafter collectively referred to as the City defendants) to intervene; the City defendants then cross-moved for summary judgment as well.

Plaintiffs' various applications for injunctive relief proved unsuccessful and, ultimately, Supreme Court granted defendants' respective motions for summary judgment. In so doing, Supreme Court concluded that, with the exception of Schulz and Loughrey, plaintiffs had standing to pursue this action. On the merits, Supreme Court declared the Act to be constitutional but declined to address plaintiffs' challenge to the constitutionality of State Finance Law § 123-b (1), finding that such claim previously had been resolved against plaintiffs. Plaintiffs thereafter attempted a direct appeal to the Court of Appeals and, following transfer to this Court, plaintiffs' motion for a preliminary injunction pending appeal was denied.

■ We affirm. As to the issue of standing, Supreme Court appears to have granted Axinn, Arter and Strawhorn, all of whom are City residents, "taxpayer" standing pursuant to General Municipal Law § 51 and "voter" standing based upon their allegation that the Act violates the public referendum requirement of NY Constitution, article VII, § 11. Although defendants do not appear to dispute, and we have no quarrel with the proposition, that plaintiffs indeed possess standing as voters to assert that the Act violates the public referendum requirement of NY Constitution, article VII, § 11 (*see, e.g.*, *Matter of Schulz v New York State Executive*, 233 AD2d 43, 48, *affd* 92 NY2d 1 [finding that the Court of Appeals decision in *Matter of Schulz v State of New York* (81 NY2d 336) evidenced "an intent to permit voter standing in an action or proceeding predicated upon an alleged violation of any of the fundamental requirements of NY Constitution, article VII, § 11"]), we disagree with Supreme Court that such standing should be limited to only those plaintiffs who are City residents. While it is true that plaintiffs allege that the Act is nothing more than an elaborate attempt to evade the constitutional limitations on debt incursion imposed upon the City by NY Constitution, article VIII, § 4, plaintiffs' over-all challenge to the Act is much broader in scope. Thus, to the extent that plaintiffs contend that the financing scheme imposed by the Act runs afoul of NY Constitution, article VII, § 11 and deprives them of a State-wide public referendum in this regard, each plaintiff here should be afforded voter standing on that basis.[1] The remaining arguments advanced by plaintiffs on this point, including their assertion that they have citizen-taxpayer standing pursuant to State Finance Law § 123-b (1), have been examined and found to be lacking in merit.[2]

---

**1.** [1] Such standing does not, however, extend to plaintiffs' claims that the Act violates NY Constitution, article VII, § 8 (gift or loan of State money or credit), article VIII, § 12 (limits upon local indebtedness) or article X, § 5 (restriction on assumption of obligations of a public corporation), as such provisions are not linked to any voting rights (*see, e.g.*, *Schulz v State of New York*, 193 AD2d 171, 177, *affd* 84 NY2d 231, *cert denied* 513 US 1127).

**2.** [1] As for Supreme Court's finding that certain plaintiffs are entitled to standing pursuant to General Municipal Law § 51, we note that plaintiffs do not appear to have asserted standing under this provision and, in our view, the record as a whole does not support such a claim (*see generally*, *Mesivita of Forest Hills Inst. v City of New York*, 58 NY2d 1014, 1016 [requiring allegation of fraudulent acts or the use of public property or funds for an entirely illegal purpose]). With respect to plaintiffs' attempt to assert stand-

■ Turning to the merits, plaintiffs' remaining constitutional claims, to the extent that they are properly before this Court,[3] are premised upon the erroneous belief that any debt incurred by the Authority pursuant to the Act is a debt of the State and the City. The basis for this belief, in turn, is plaintiffs' assertion that the State and City are obligated, through the payments made to the Authority by the Comptroller, to fund the debt service on the bonds issued by the Authority. Plaintiffs' argument on this point, however, ignores not only the plain language of Public Authorities Law § 2799-gg (10) and § 2799-ii,[4] but also the Court of Appeals prior decisions in *Wein v City of New York* (36 NY2d 610) and *Schulz v State of New York* (84 NY2d 231, *cert denied* 513 US 1127, *supra*), which, in our view, are entirely dispositive of this matter. A review of the funding mechanisms at issue in *Wein* and *Schulz*, each of which contained language virtually identical to that set forth in Public Authorities Law § 2799-gg (10), plainly reveals that the payments made by the Comptroller here are "permissible gifts" to the Authority (*see, Wein v City of New York, supra*, at 618-619).

Simply stated, plaintiffs have failed to meet their heavy burden of demonstrating beyond a reasonable doubt (*see, Mat-*

ing pursuant to State Finance Law § 123-b (1), it is clear that regardless of the manner in which plaintiffs' claims are styled, they essentially are challenging the validity of the Authority's issuance of bonds to fund capital improvement projects identified in New York City. The plain language of State Finance Law § 123-b (1) precludes standing under such circumstances, and the constitutionality of such provision has long since been resolved (*see, e.g., Schulz v State of New York*, 185 AD2d 596, 597, *appeal dismissed* 81 NY2d 336, *supra*).

3. For example, we note that although plaintiffs argue on appeal that the Act violates NY Constitution, article VII, § 7 (providing, in relevant part, that "[n]o money shall ever be paid out of the state treasury or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law"), this issue was not raised in plaintiffs' complaint or amended complaint and, hence, is not properly before us (*see, Matter of Pure Air & Water v Davidsen*, 246 AD2d 786, 787, *appeal dismissed* 91 NY2d 955).

4. As noted previously, Public Authorities Law § 2799-gg (10) provides that: "The bonds or other obligations of the authority shall not be a debt of either the state or the city, and neither the state nor the city shall be liable thereon, nor shall they be payable out of any funds other than those of the authority; and such bonds shall contain on the face thereof a statement to such effect." Similarly, Public Authorities Law § 2799-ii, which discusses the payments made to the Authority by the Comptroller, provides, in relevant part, that "[n]othing in this section shall be deemed to obligate the state to make any additional payments or impose any taxes to satisfy the debt service obligations of the authority".

*ter of Klein [Hartnett]*, 78 NY2d 662, 666, *cert denied* 504 US 912) that, pursuant to the Act, the State and City are legally obligated to the holders of the bonds in the event of the Authority's default and, thus, have incurred debt in contravention of the relevant constitutional mandates. Plaintiffs' remaining contentions have been examined and found to be lacking in merit.

MIKOLL, J. P., MERCURE, WHITE and YESAWICH JR., JJ., concur.

Ordered that the order is affirmed, without costs.