# IN THE SUPREME COURT OF IOWA

No. 16–1006

Filed June 22, 2018

**MORGAN HONOMICHL, ROBIN HONOMICHL, TIMOTHY HONOMICHL, DEB CHANCE, KARA CHANCE, KAREN JO FRESCOLN, MIKE MERRILL,** and **Q.H.,**

Appellee,

vs.

**VALLEY VIEW SWINE, LLC** and **JBS LIVE PORK, LLC,**

Appellants.

Appeal from the Iowa District Court for Wapello County, Annette J. Scieszinski, Judge.

Defendants appeal the district court ruling on various motions, including their motion for summary judgment, which denied their statutory immunity defense under Iowa Code section 657.11(2) based on a finding by the district court that the statute was unconstitutional as applied. **REVERSED AND REMANDED.**

William H. Roemerman and Gerald T. Sullivan of Elderkin & Pirnie, PLC, Cedar Rapids, for appellant Valley View Swine, LLC.

Jacob D. Bylund, Scott L. Halbur, Shannon L. Sole, and Ryan P. Howell of Faegre Baker Daniels LLP, Des Moines, for appellant, JBS Live Port, LLC.

Jennifer H. De Kock, Steven P. Wandro, and Kara M. Simons of Wandro & Associates, P.C., Des Moines, and David E. Sykes, Fairfield, for appellees.

Thomas W. Lipps of Peterson & Lipps, Algona, and David J. Stein Jr. (until withdrawal) of Stein Law Office, Milford, for amicus curiae Iowa Association for Justice.

Eldon L. McAfee and Julia L. Vyskocil of Brick Gentry, P.C., West Des Moines, for amici curiae Iowa Pork Producers Association and Iowa Farm Bureau Federation.

**ZAGER, Justice.**

The plaintiffs are the owners and/or residents of real estate located near the confined animal feeding operations (CAFOs) owned and operated by the defendants. The plaintiffs have brought suit against the defendants, claiming the defendants are negligent in their operation of the CAFOs. The plaintiffs also contend the CAFOs constitute a nuisance that entitles the plaintiffs to damages for the loss of use and enjoyment of their property due to the odors, pathogens, and flies that allegedly emanate from the CAFOs. The defendants filed a motion for summary judgment on the nuisance claims alleging Iowa Code section 657.11(2) (2016) bars such claims since the plaintiffs cannot meet the requirements necessary under the statute to recover the requested special damages against the CAFOs. Meanwhile, the plaintiffs sought partial summary judgment to strike the defendants' statutory immunity defense under section 657.11(2).

The district court denied the defendants' motion for summary judgment and granted the plaintiffs' motion for partial summary judgment. In doing so, the district court found section 657.11(2) was unconstitutional as applied to the plaintiffs under article I, section 1 of the Iowa Constitution because it denies plaintiffs access to a remedy for their alleged injuries. The defendants filed an application for interlocutory appeal and stay, arguing the district court erred in granting plaintiffs' motion for partial summary judgment by finding that section 657.11(2) was unconstitutional as applied to the plaintiffs. We granted the application for interlocutory appeal and stay and retained the appeal.

We now reverse the district court ruling granting the plaintiffs' motion for partial summary judgment. Specifically, the district court found that section 657.11(2), as applied to the plaintiffs in this case, violated article I, section 1. However, the district court did so without

making specific findings of fact relative to any plaintiff. Without this fact-based analysis, we are unable to resolve this issue on this record. We therefore reverse and remand the case to the district court for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

This case centers around two CAFOs located in Wapello County, Iowa, which are known as Valley View Site 1 (Site 1) and Valley View Site 2 (Site 2). Defendant Valley View Swine, LLC, is a limited liability company organized under the laws of the State of Iowa that has three members: Nicholas Adam, Shawn Adam, and Jeffrey Adam. In 2013, Valley View Swine entered into discussions with defendant JBS Live Pork, LLC, (JBS)—then operating as Cargill Pork—to establish CAFOs at Site 1 and Site 2. JBS is authorized to contract with Iowa swine producers for the care and feeding of JBS-owned swine pursuant to a consent decree filed on January 19, 2006, between the State of Iowa and Cargill Pork, LLC, which transferred its ownership to the company that now goes by JBS Live Pork, LLC.

In April 2013, the Iowa Department of Natural Resources (DNR) issued Valley View Swine construction permits to implement CAFOs on Site 1 and Site 2 in accordance with Iowa DNR rules and regulations. These rules and regulations required Valley View Swine to meet certain conditions and requirements both during and following construction. Some of these conditions and requirements included implementing an approved manure management plan and following proper waste management procedures to protect soil and waterways. Construction on these sites was also required to comply with all local, state, and federal requirements applicable to CAFOs. These requirements included the need to maintain the minimum separation distances between the CAFOs and

"residence[s] not owned by the owner of the confinement feeding operation" or a commercial enterprise, bona fide religious institution, or an educational institution" under Iowa Code section 459.202. Iowa Code § 459.202.

Valley View Swine complied with the applicable setback distances in constructing the CAFOs. At the time of construction in 2013, the necessary setback distance between the CAFOs and the residences at issue was .36 miles or 1875 feet. *Id.* § 459.202(*b*) (2013). The closest plaintiffs to Site 1, the Honomichls, live .67 miles from Site 1. The Honomichls are also the closest plaintiffs living near Site 2, residing .72 miles from Site 2. The Chances live .70 miles from Site 1 and 2.0 miles from Site 2. Karen Jo Frescoln lives in Libertyville, Iowa, nearly ten miles from the closest CAFO at issue. However, she is a party to this suit since she owns property on which her daughter resides that is .96 miles from Site 1 and 2.35 miles from Site 2.

On August 1, 2013, near the completion of the construction, Valley View Swine and JBS entered into hog-feeding agreements for Valley View Swine to raise and care for JBS-owned hogs at Site 1 and Site 2. JBS agreed to pay Valley View Swine $3.3334 for each of the 9920 pig spaces on the combined Site 1 and Site 2. This provides Valley View Swine with annual payments exceeding $396,000. Pursuant to the agreements, Valley View Swine is required to "comply with all local, state, and federal laws, regulations, permits, and orders" pertaining to the agreements. Moreover, Valley View Swine must uphold the JBS Swine Welfare Policy and allow JBS to conduct periodic audits. This includes abiding by the JBS Wean-to-Finish Manual detailing the necessary procedures Valley View Swine must follow for biosecurity, preplacement, pig care and

management, feed and water management, health, barn environment, safety, waste management, and maintenance of the CAFOs.

To fulfill these agreements, Valley View Swine contracts with a third-party barn manager, Brandon Warren, who works as an independent contractor to manage the operation of the CAFOs. Since Valley View Swine commenced operation of the CAFOs, the Iowa DNR has not found Valley View Swine to be in violation of any statute or regulation governing its operations. The JBS periodic audits have likewise not found Valley View Swine in violation of any applicable statutes or regulations.

In the same month that the defendants entered into their hog feeding agreements, the Iowa DNR authorized the use of Site 1 and Site 2 to serve as CAFOs, finding they were both constructed in accordance with the Iowa DNR requirements. Site 1 began operation that month, and Site 2 followed suit in September. In November, seventy individuals, including the current plaintiffs, filed a lawsuit against Valley View Swine, the Adams, Cargill Pork (now JBS), Tri-L Farms, Inc., Larry Hickenbottom, Josh Hickenbottom, and Richard Warren. The petition alleged negligence and temporary nuisance based on the odors, pathogens, and flies they alleged stem from the CAFOs, as well as defendants' alleged failure to use prudent management practices to reduce these odors, pathogens, and flies. However, the plaintiffs failed to fulfill the mediation requirement established in Iowa Code section 657.10 before they filed their petition, and the district court dismissed the case on January 2, 2014.

On April 2, sixty-nine plaintiffs, including the current plaintiffs, refiled the suit making the same claims against the same defendants. In September, the district court severed the case into three divisions— classified as Divisions A, B, and C—based upon the various plaintiffs' allegations against the different defendant groups. From those sixty-nine

plaintiffs, Deb Chance, Jason Chance, Kara Chance, Karen Jo Frescoln, Robin Honomichl, Timothy Honomichl, Morgan Honomichl, Q.H., C.H., and Mike Merrill were among those placed in Division A, which is the only division at issue in this case. Division A plaintiffs brought their claims against Valley View Swine, the Adams, and Cargill Pork (JBS). The district court joined all of the divisions for discovery purposes.

On September 30, Division A plaintiffs filed an amended petition and jury demand on behalf of all original sixty-nine plaintiffs claiming temporary nuisance, permanent nuisance, and negligence against Division A defendants due to the odors, pathogens, and flies that allegedly emanate from the CAFOs. The Division A defendants filed an answer, which invoked section 657.11(2) as an affirmative defense, alleging the plaintiffs could not meet the requirements under the statute to recover their requested damages. In October, the district court implemented a bellwether procedure, allowing the plaintiffs and defendants to each select two plaintiff households in order for separate bellwether trials to occur in the different divisions. The bellwether plaintiffs include the plaintiffs in this case, as well as C.H. and Mike Merrill.

Since 2013, plaintiffs' counsel have filed numerous nuisance suits against JBS involving large groups of plaintiffs. Plaintiffs' counsel have litigated these suits until shortly before trial, at which time the plaintiffs dismissed them. For example, Division A plaintiffs have filed four versions of their petition, eliminating plaintiffs along the way. C.H. was dismissed without prejudice in August 2015, and Mike Merrill dismissed his claims against the defendants in June 2016.

Similarly, Division C plaintiffs eliminated twenty-six plaintiffs during the course of litigation, which included filing six petitions against Division C defendants prior to trial. Division B plaintiffs dismissed their

suit in its entirety in November 2014. Following the dismissal of Division B, the district court consolidated Divisions A and C for discovery and deadline purposes with another group of fifteen plaintiffs suing JBS, among others, for negligence and nuisance in Poweshiek County. The district court ordered the Division C case to be tried first, followed by the Poweshiek County case and the Division A case.

The defendants in all of the divisions filed a motion for summary judgment in their respective cases on October 6, 2015, maintaining section 657.11(2) provided them with statutory immunity against the plaintiffs' claims. On the same day, the plaintiffs in all of the divisions filed a motion for partial summary judgment in their respective cases, asking the court to strike the defendants' statutory immunity defense under section 657.11(2) by requesting the district court declare the statute unconstitutional as applied to them. The district court subsequently denied Division C defendants' summary dismissal of the temporary nuisance claims and granted Division C plaintiffs' motion for partial summary judgment on the statutory immunity defense, finding section 657.11(2) was unconstitutional as applied under the inalienable rights clause of article I, section 1 of the Iowa Constitution. The district court granted Division C defendants summary dismissal of all permanent nuisance claims.

The Division C trial took place in February 2016, and the jury returned defense verdicts that found no nuisance on the properties of any of the plaintiffs. JBS subsequently filed a motion for costs and expenses, alleging three of the Division C plaintiffs filed frivolous claims under section 657.11(5). The district court held JBS raised a valid defense under section 657.11 that rendered the three plaintiffs' claims frivolous within the meaning of the statute. Therefore, the district court found each of the

three plaintiffs was liable for his or her portion of the costs that JBS incurred while defending against the frivolous claims.

In June 2016, the district court ruled on the summary judgment motions at issue in this case surrounding Division A. The district court denied Division A defendants' summary dismissal of the claims and granted Division A plaintiffs' motion for partial summary judgment, declaring section 657.11(2) is unconstitutional as applied to Division A plaintiffs under the inalienable rights clause of the Iowa Constitution. The district court granted summary dismissal of all permanent nuisance claims.

In its ruling, the district court noted the statutory immunity established in section 657.11 "unduly burdens the plaintiffs by denying them access to a lawful remedy for their alleged injuries to the person and/or to property occasioned in [the] use of their real-estate interests." Consequently, the district court denied defendants "summary dismissal of the plaintiffs' claims on the basis of the immunity in the first sentence of section 657.11(2)." Further, the ruling stated,

> There are no material facts in good-faith dispute that demonstrate that the plaintiffs suffer a disqualification from remedy under a premise that they, as individuals, benefit from the immunity statute greater than those in the general public who benefit from the immunity protection of Iowa Code section 657.11(2). JBS's Motion seeking summary dismissal of all claims for a disqualification from remedy, drawn from analysis of the economic impact of the Iowa pork industry, is denied.

On June 13, the defendants applied for interlocutory appeal and stay, which we granted and retained. On appeal, the defendants argue the district court erred in granting plaintiffs' motion for partial summary judgment by finding Iowa Code section 657.11(2) (2016) unconstitutional under the inalienable rights clause of article I, section 1 of the Iowa

Constitution as applied to the facts of this case. In support of this claim, the defendants allege the district court improperly applied our previous holding in *Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168 (Iowa 2004), to this case without making specific factual findings. Thus, the defendants reason, the district court ruling amounts to a finding that the statutory immunity provided in section 657.11(2) is facially unconstitutional.

## II. Standard of Review.

"We review a district court ruling granting a motion for summary judgment for correction of errors at law." *Estate of Gray ex rel. Gray v. Baldi*, 880 N.W.2d 451, 455 (Iowa 2016) (quoting *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 447 (Iowa 2008)). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 398 (Iowa 2017) (quoting *Barker v. Capotosto*, 875 N.W.2d 157, 161 (Iowa 2016)). "An issue is 'genuine' if the evidence in the record 'is such that a reasonable jury could return a verdict for the non-moving party.' " *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015) (quoting *Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.*, 754 N.W.2d 854, 857 (Iowa 2008)). "We . . . view the record in the light most favorable to the nonmoving party and will grant that party all reasonable inferences that can be drawn from the record." *Plowman*, 896 N.W.2d at 398 (alteration in original) (quoting *Estate of Gray*, 880 N.W.2d at 455). "Summary judgment is appropriate if the only conflict concerns the legal consequences of undisputed facts." *Id.* (quoting *Peppmeier v. Murphy*, 708 N.W.2d 57, 58 (Iowa 2005)).

We review constitutional challenges to statutes de novo. *Hensler v. City of Davenport*, 790 N.W.2d 569, 578 (Iowa 2010). We presume statutes are constitutional, and the party challenging the statute "must prove the

unconstitutionality beyond a reasonable doubt." *State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005) (quoting *State v. Hernandez-Lopez*, 639 N.W.2d 226, 233 (Iowa 2002)). This requires the challenger to "refute every reasonable basis upon which the statute could be found to be constitutional." *Id.* (quoting *Hernandez-Lopez*, 639 N.W.2d at 233). If the statute is susceptible to multiple constructions, only one of which is constitutional, we are obliged to adopt the constitutional construction of the statute. *Id.* Finally, we will only decide a facial challenge to a statute if we hold that the challenged statute is unconstitutional under the set of facts before us. *See War Eagle Vill. Apartments v. Plummer*, 775 N.W.2d 714, 722 (Iowa 2009).

**III. Analysis.**

**A. Preliminary Concepts: Facial Challenge Versus As-Applied Challenge.** A facial challenge is different from an as-applied challenge. *See* Alex Kreit, *Making Sense of Facial and As-Applied Challenges*, 18 Wm. & Mary Bill Rts. J. 657, 657 (2010). The distinction between the two types of challenges appears simple enough, yet it is unclear and "more illusory than the ready familiarity of the terms suggests." Gillian E. Metzger, *Facial Challenges and Federalism*, 105 Colum. L. Rev. 873, 880 (2005).

A facial challenge is one in which no application of the statute could be constitutional under any set of facts. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, 128 S. Ct. 1184, 1190 (2008); *Sabri v. United States*, 541 U.S. 600, 609, 124 S. Ct. 1941, 1948 (2004); *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017); *Spiker v. Spiker*, 708 N.W.2d 347, 360 (Iowa 2006); *F.K. v. Iowa Dist. Ct.*, 630 N.W.2d 801, 805 (Iowa 2001); *State v. Duncan*, 414 N.W.2d 91, 96 (Iowa 1987); *State v. Legg*, 785 S.E.2d 369, 371 (S.C. 2016). Such a challenge is "the most difficult . . . to mount successfully" because it requires the challenger to

show the statute under scrutiny is unconstitutional in all its applications. *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987). In contrast, an as-applied challenge alleges the statute is unconstitutional as applied to a particular set of facts. *People v. Thompson*, 43 N.E.3d 984, 991 (Ill. 2015); *Walker v. Johnson County*, 209 N.W.2d 137, 140 (Iowa 1973); *see State v. Bruegger*, 773 N.W.2d 862, 884 (Iowa 2009); *State v. Pocian*, 814 N.W.2d 894, 897–98 (Wis. Ct. App. 2012).

We examine two cases to illustrate the difference between facial and as-applied challenges. In *Gravert v. Nebergall*, the landowners alleged Iowa's partition fence statute violated the inalienable rights clause of article I, section 1 of the Iowa Constitution. 539 N.W.2d 184, 185–86 (Iowa 1995). We first observed whether the statute was constitutional on its face. *Id.* at 186–87. In answering in the affirmative, we reasoned "[t]he primary purpose of [the statute] has been to prevent livestock from running at large and causing damage on another person's land." *Id.* at 187. Because the statute "serve[d] the broader purpose of mediating boundary, fence, and trespass disputes by requiring adjoining landowners to share the cost of a partition fence," we held the landowners did not have a valid facial challenge. *Id.*

We then observed whether the statute was constitutional as applied to the landowners. *Id.* at 187–88. First, we stated the statute served the public purpose even assuming nearby livestock owners received the primary benefits under the statute. *Id.* at 188. Second, we stated "[a] law does not become unconstitutional because it works a hardship" or because the law requires substantial expenditures for compliance. *Id.* Moreover, the landowners benefited from the partition fence because it protected their crops from the adjoining landowners' horses. *Id.* In sum, in concluding that the means were reasonably necessary to accomplish the

stated purpose, we held the landowners failed to show the statute was unduly oppressive as applied to them. *Id.*

In *City of Sioux City v. Jacobsma*, a vehicle owner alleged the city's automated traffic enforcement (ATE) ordinance violated article I, section 1. 862 N.W.2d 335, 338 (Iowa 2015). Specifically, the owner contended the ordinance illegally created a presumption that he was driving at the time of the speeding infraction unless he rebutted the presumption with a stolen vehicle report. *Id.* at 340. The owner stipulated he owned the vehicle. *Id.* at 346. The owner also stipulated the vehicle was speeding at the time of the infraction but did not present evidence that someone else was driving the vehicle during the relevant period. *Id.*

We first stated the ordinance to control speeding on state highways implicated a public interest. *Id.* at 352. We then stated the ordinance was not arbitrary or unreasonable. *Id.* at 353. To resolve the issue of whether the ordinance violated the inalienable rights clause of the Iowa Constitution, we applied the rational-basis test for due process claims under federal caselaw. *Id.* We reasoned, "The overwhelming majority of cases considering due process challenges to such a framework in civil ATE ordinances have concluded they are not so arbitrary or irrational to offend due process." *Id.* In our earlier examination of the owner's due process claim, we had reasoned, "[I]t is quite rational to [infer] that a registered owner who offers no evidence that he was not driving the vehicle at the time of the infraction was, in fact, the operator." *Id.* at 347. In dictum, we stated that even if we were to use a more rigorous rational-basis test, the ordinance would nevertheless pass constitutional muster. *Id.*

We declined to consider a facial challenge to the ATE ordinance. *Id.* at 346. When "a statute is constitutional as applied to a defendant, the defendant cannot make a facial challenge unless a recognized exception to

the standing requirement applies." *Id.* (quoting *State v. Robinson*, 618 N.W.2d 306, 311 n.1 (Iowa 2000)). Because the owner did not claim such an exception, we did not entertain the merits of a facial challenge. *See id.*

We now turn to the relevant statutory provisions relating to right-to-farm laws generally, and the proper analysis to apply to our law that is at issue here.

**B. Right-to-Farm Laws in the United States.** All fifty states have right-to-farm laws that provide farmers with various forms of statutory immunity from nuisance claims similar to section 657.11(2). Forty-four of these state statutes have not faced constitutional challenges.[1] Six states

---

[1]*See* Ala. Code § 6-5-127 (Westlaw through Act 2018-579); Alaska Stat. Ann. § 09.45.235 (West, Westlaw through ch. 7 of 2018 2d Reg. Sess.); Ariz. Rev. Stat. Ann. § 3-112 (Westlaw through 1st Spec. Sess. of 53rd Leg. (2018)); Ark. Code Ann. § 2-4-107 (West, Westlaw through 2018 Reg. Sess. & 2d Extraordinary Sess.); Cal. Civ. Code § 3482.5 (West, Westlaw through ch. 13 of 2018 Reg. Sess.); Colo. Rev. Stat. Ann. § 35-3.5-102 (West, Westlaw through ch. 256 of 2d Reg. Sess. of 71st Gen. Assemb. (2018)); Conn. Gen. Stat. Ann. § 19a-341 (West, Westlaw through public acts enacted on or before June 6, 2018); Del. Code Ann. tit. 3, § 1401 (West, Westlaw through 81 Laws 2018); Fla. Stat. Ann. § 823.14 (West, Westlaw through 2018 2d Reg. Sess.); Ga. Code Ann. § 41-1-7 (West, Westlaw through 2018 Sess.); Haw. Rev. Stat. Ann. § 165-4 (West, Westlaw through Act 11 of 2018 Reg. Sess.); Idaho Code Ann. § 22-4503 (West, Westlaw through 2nd Reg. Sess. of 64th Leg.); 740 Ill. Comp. Stat. Ann. 70/3 (West, Westlaw through P.A. 100-585 of 2018 Reg. Sess.); Kan. Stat. Ann. § 2-3201 (West, Westlaw through 2018 Reg. Sess.); Ky. Rev. Stat. Ann. § 413.072 (West, Westlaw through ch. 74, 96–154, 158–164, & 170 of 2018 Reg. Sess.); La. Stat. Ann. § 3:3603 (Westlaw through 2018 1st Extraordinary Sess.); Me. Rev. Stat. Ann. tit. 7, § 153 (Westlaw through ch. 317 of the 2017 2d Reg. Sess.); Md. Code Ann., Cts. & Jud. Proc. § 5-403 (West, Westlaw through 2018 Reg. Sess.); Mass. Gen. Laws Ann. ch. 243, § 3 (West, Westlaw through ch.108 of 2018 2d Annual Sess.); Mich. Comp. Laws Ann. § 286.473 (West, Westlaw through P.A. 2018, No. 183 of 2018 Reg. Sess. of 99th Leg.); Minn. Stat. Ann. § 561.19 (West, Westlaw through 2018 Reg. Sess.); Miss. Code Ann. § 95-3-29 (West, Westlaw through 2018 Reg. Sess.); Mont. Code Ann. § 27-30-101 (West, Westlaw through 2017 Sess.); Neb. Rev. Stat. Ann. § 2-4403 (West, Westlaw through 2d Reg. Sess. of 105th Leg. (2018)); Nev. Rev. Stat. Ann. § 40.140 (West, Westlaw through 79th Reg. Sess. of Nev. Leg. (2017)); N.H. Rev. Stat. Ann. § 432:33 (Westlaw through ch. 57 of 2018 Reg. Sess.); N.J. Stat. Ann. § 4:1C-10 (West, Westlaw through L. 2018, c. 15 & J.R. No.5); N.M. Stat. Ann. § 47-9-3 (West, Westlaw through 2d Reg. Sess. of 53rd Leg. (2018)); N.C. Gen. Stat. Ann. § 106-701 (West, Westlaw through 2017 Reg. Sess.); N.D. Cent. Code Ann. § 42-04-02 (West, Westlaw through 2017 Reg. Sess.); Ohio Rev. Code Ann. § 929.04 (West, Westlaw through File 66 of 132nd Gen. Assemb. (2017-2018)); Okla. Stat. Ann. tit. 50, § 1.1 (West, Westlaw through 1st Reg. Sess., 1st Extraordinary Sess., & ch. 17 of 2d Extraordinary Sess. of 56th Leg. (2018)); 3 Pa. Stat. and Cons. Stat. Ann. § 954 (West, Westlaw through 2018

have faced constitutional challenges to their right-to-farm laws, but Iowa is the only state to hold that the statutory immunity available under its right-to-farm law is unconstitutional in any manner.[2]

**C. Iowa Code Section 657.11(2) Jurisprudence and the *Gacke* Test.** Chapter 657.11 strives "to protect and preserve animal agricultural production operations." Iowa Code § 657.11(1). To further this intention, the Iowa legislature enacted section 657.11(2) to shield lawfully operating CAFOs "from the costs of defending nuisance suits, which negatively impact upon Iowa's competitive economic position and discourage persons from entering into animal agricultural production." *Id.* § 657.11(1). Section 657.11(2) provides,

> 2. An animal feeding operation, as defined in section 459.102, shall not be found to be a public or private nuisance

---

Reg. Sess. Act 16); 2 R.I. Gen. Laws Ann. § 2-23-5 (West, Westlaw through ch. 28 of Jan. 2018 Sess.); S.C. Code Ann. § 46-45-70 (Westlaw through 2018 Act No. 177); S.D. Codified Laws § 21-10-25.1 (Westlaw through 2018 Reg. Sess.); Tenn. Code Ann. § 43-26-103 (West, Westlaw through 2018 2d Reg. Sess. of 110th Gen. Assemb.); Utah Code Ann. § 78B-6-1104 (West, Westlaw through 2018 Gen. Sess.); Vt. Stat. Ann. tit. 12, § 5753 (West, Westlaw through 2017–18 Sess. of Gen. Assemb.); Va. Code Ann. § 3.2-301 (West, Westlaw through 2018 Reg. Sess.); Wash. Rev. Code § 7.48.305 (West, Westlaw through 2018 Reg. Sess.); W. Va. Code Ann. § 19-19-4 (West, Westlaw through 2018 Reg. Sess.); Wis. Stat. § 823.08 (West, Westlaw through 2017 Act 367); Wyo. Stat. Ann. § 11-44-103 (West, Westlaw through 2018 Budget Sess.).

[2]*See Lindsey v. DeGroot*, 898 N.E.2d 1251, 1259–62 (Ind. Ct. App. 2009) (affirming the constitutionality of Indiana's right-to-farm law as applied to the plaintiffs and declining the plaintiffs' "invitation to adopt Iowa's proposition that the right to maintain a nuisance contained in the Act creates an easement in favor of [the agricultural operation]"); *Gacke*, 684 N.W.2d at 175 (holding Iowa Code section 657.11(2) violates the takings clause of the Iowa Constitution and, as applied to the plaintiffs, violates the inalienable rights clause of the Iowa Constitution); *Labrayere v. Bohr Farms, LLC*, 458 S.W.3d 319, 335 (Mo. 2015) (en banc) (affirming the district court judgment that the statutory immunity provided under Missouri law to agricultural operations does not violate the Missouri Constitution); *In re Pure Air & Water of Chemung Cty. v. Davidsen*, 246 A.D.2d 786, 787 (N.Y. App. Div. 1998) (holding the state right-to-farm statute did not violate due process); *Hale v. State*, 314 P.3d 345, 347, 350 (Or. Ct. App. 2013) (declining to rule on the claim that the Oregon right-to-farm law violates the Oregon Constitution because the court was "constrained by constitutional justiciability requirements"); *Barrera v. Hondo Creek Cattle Co.*, 132 S.W.3d 544, 549 (Tex. Ct. App. 2004) (holding the Texas right-to-farm law did not constitute an unconstitutional taking).

under this chapter or under principles of common law, and the animal feeding operation shall not be found to interfere with another person's comfortable use and enjoyment of the person's life or property under any other cause of action. However, this section shall not apply if the person bringing the action proves that an injury to the person or damage to the person's property is proximately caused by either of the following:

*a.* The failure to comply with a federal statute or regulation or a state statute or rule which applies to the animal feeding operation.

*b.* Both of the following:

(1) The animal feeding operation unreasonably and for substantial periods of time interferes with the person's comfortable use and enjoyment of the person's life or property.

(2) The animal feeding operation failed to use existing prudent generally accepted management practices reasonable for the operation.

*Id.* § 657.11(2).

We examined the constitutionality of section 657.11(2) in *Gacke*, where homeowners filed a nuisance suit against neighboring CAFOs where they claimed the statutory immunity established in section 657.11(2) was unconstitutional under the takings clause and the inalienable rights clause of the Iowa Constitution. *Gacke*, 684 N.W.2d at 171–72. We found that section 657.11(2) created an easement on the plaintiffs' property in violation of the takings clause of the Iowa Constitution by allowing the CAFOs to continue acting as a nuisance while barring the plaintiffs from obtaining the appropriate remedy of diminution-in-value damages for the actual taking of their property. *Id.* at 174–75. Yet, we held that "[t]he takings clause does not prohibit limitations on other damages recoverable under a nuisance theory" since "the recovery of diminution-in-value damages fully compensates the burdened property owners for the unlawful taking." *Id.* at 175. We also found section 657.11(2) was unconstitutional

as applied to the plaintiffs in that case under the inalienable rights clause based on their specific circumstances. *Id.* at 179.

Our holding that section 657.11(2) was unconstitutional under the inalienable rights clause as applied in *Gacke* was primarily based on three facts present in that case. First, the plaintiffs "receive[d] no particular benefit from the nuisance immunity granted to [the CAFOs] other than that inuring to the public in general." *Id.* at 178. Second, despite obtaining no specific benefit from the statutory immunity, the plaintiffs "sustain[ed] significant hardship." *Id.* Third, the plaintiffs had resided on their property since 1974, long before the surrounding CAFOs were built in 1996, approximately 1300 feet north of the plaintiffs' home. *Id.* at 171, 178. Since 1974, the plaintiffs "had spent considerable sums of money in improvements to their property prior to construction of the" neighboring CAFOs, while their property value was reduced by approximately $50,000 following the construction of the CAFOs. *Id.*

Under these circumstances, "one property owner—the producer—[was] given the right to use his property *without* due regard for the personal and property rights of his neighbor," rendering the statutory immunity of section 657.11(2) unconstitutional as applied to the plaintiffs. *Id.* at 179. Therefore, we found the plaintiffs were entitled to "special damages supported by the evidence, past and future, as well as any decreased value of the plaintiffs' property proved by them" if the trial court concluded on remand that the CAFOs "[would] be operated indefinitely as a nuisance." *Id.* at 185. Nevertheless, "[w]e express[ed] no opinion as to whether [section 657.11(2)] might be constitutionally applied under other circumstances." *Id.* at 179.

**D. The Constitutionality of Iowa Code Section 657.11(2) as Applied to These Plaintiffs.** The inalienable rights clause states, "All men

and women are, by nature, free and equal, and have certain inalienable rights—among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness." Iowa Const. art. I, § 1. This provision protects "pre-existing common law" property rights from "arbitrary restrictions." *May's Drug Stores v. State Tax Comm'n*, 242 Iowa 319, 329, 45 N.W.2d 245, 250 (1950). Such property rights include the "right to acquire, possess, and enjoy property." *State v. Osborne*, 171 Iowa 678, 695, 154 N.W. 294, 301 (1915). Yet, the protections afforded under the inalienable rights clause are not absolute, as they are "subject to reasonable regulation by the state in the exercise of its police power." *Gacke*, 684 N.W.2d at 176. "Police power refers to the legislature's broad, inherent power to pass laws that promote the public health, safety, and welfare." *Gravert*, 539 N.W.2d at 186. In discussing these rights, we used a two-step analysis:

> To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.

*Id.* at 186 (quoting *Lawton v. Steele*, 152 U.S. 133, 136–37, 14 S. Ct. 499, 501 (1894)).

In applying the first step in *Gacke*, we held that section 657.11(2) was a valid exercise of the state police power although individual producers, not the public, were the direct beneficiaries of the statutory immunity. *Gacke*, 684 N.W.2d at 178. We ruled "[t]he legislature's objective of promoting animal agriculture in this state promotes the interests of the public generally and the immunity granted in this statute bears a reasonable relationship to this legislative objective" even though

the statutory immunity directly benefitted animal agricultural producers. *Id.* This is still the case today, as the claimed government interest for section 657.11(2) to promote "animal agriculture in this state by protecting persons engaged in the care and feeding of animals" continues to promote the interests of the public in general. Iowa Code § 657.11(1). This is true even though the law "benefits certain individuals or classes more than others." *Gravert*, 539 N.W.2d at 188. "Any [further] determination on the merits of the policy arguments is not for the court, but the political organs of government by an informed electorate." *City of Davenport v. Seymour*, 755 N.W.2d 533, 544 (Iowa 2008).

The second step involves the three-prong test espoused in *Gacke*. For courts to determine whether section 657.11(2) is unconstitutional as applied to plaintiffs, plaintiffs must show they (1) "receive[d] no particular benefit from the nuisance immunity granted to their neighbors other than that inuring to the public in general[,]" (2) "sustain[ed] significant hardship[,]" and (3) "resided on their property long before any animal operation was commenced" on neighboring land and "had spent considerable sums of money in improvements to their property prior to construction of the defendant's facilities." *Gacke*, 684 N.W.2d at 178. In applying the second step in *Gacke*, we concluded the means employed by the legislature to accomplish its objective under section 657.11(2) were "unduly oppressive and, therefore, not a reasonable exercise of the state's police power" as applied to the plaintiffs in violation of the inalienable rights clause of the Iowa Constitution. *Id.* at 179. We reached this decision based on the specific circumstances of the case as developed at trial. *Id.* at 171.

Following *Gacke*, courts throughout the state have fashioned the three factors we considered in our as-applied analysis in *Gacke* into a

three-prong test. Consequently, courts have been applying this three-prong test to determine the constitutionality of section 657.11(2) as applied to other plaintiffs bringing similar suits without analyzing other facts or changes to the regulatory scheme governing CAFOs since *Gacke*. The defendants urge us to reconsider the validity of *Gacke* in light of the changes to the regulatory scheme governing CAFOs since *Gacke*. Additionally, the defendants maintain the district court improperly applied the factors set forth in *Gacke* to this case without making specific factual findings in its ruling that section 657.11(2) is unconstitutional as applied under the inalienable rights clause of the Iowa Constitution. The defendants claim the proper approach to resolving nuisance claims under section 657.11(2) is to require the "district court considering a nuisance claim to evaluate only whether a plaintiff can establish an exception to the statute under the negligence standard of subsection 657.11(2)."

The defendants' request for us to reexamine the validity of *Gacke* requires us to consider our adherence to stare decisis. "[T]he principle of stare decisis demands that we respect prior precedent and that we do not overturn them merely because we might have come to a different conclusion." *State v. Bruce*, 795 N.W.2d 1, 3 (Iowa 2011). Nevertheless, "we must revisit our prior decisions if those decisions are flawed and incompatible with present conditions." *State v. Thompson*, 856 N.W.2d 915, 920 (Iowa 2014). "[W]hen a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment." *McElroy v. State*, 703 N.W.2d 385, 395 (Iowa 2005) (alteration in original) (quoting Benjamin N. Cardozo, *The Nature of the Judicial Process* 150 (1921)). In revisiting our prior decisions, we essentially must decide "whether more harm will be done by overruling our

previous cases in order to install what we think is clearly the correct principle, or by adhering to an unsound decision in the interest of the rule of stare decisis." *State v. Liddell*, 672 N.W.2d 805, 813 (Iowa 2003) (quoting *Stuart v. Pilgrim*, 247 Iowa 709, 713–14, 74 N.W.2d 212, 215 (1956)). In this case, we must revisit *Gacke* to determine whether "compelling reasons exist to overturn our prior interpretation." *State v. Williams*, 895 N.W.2d 856, 860 (Iowa 2017).

The legal landscape governing CAFOs has changed since we decided *Gacke*. In *Gacke*, the plaintiffs lived approximately 1300 feet, or one-quarter mile, away from the CAFOs. 684 N.W.2d at 171. The necessary separation distance for the same size facility today exceeds that, as the minimum distance between the CAFOs and adjacent landowners at issue is 1875 feet. *See* Iowa Code § 459.202(*b*) (2016). And here, the separation distance from both Site 1 and Site 2 to the nearest home in this case almost doubles the statutorily required separation distance between the CAFOs and the closest plaintiffs—the Honomichls—who live approximately .67 miles or 3537 feet from the closest CAFO. Under the current regulatory framework, the Honomichls have the power to prevent the construction of a CAFO on 253.55 acres of land surrounding their property—much of which they do not own but are given a certain amount of power over due to the regulatory scheme governing separation distances. *See id.*

Moreover, the legislature has since enacted more requirements governing the construction of CAFOs including a manure management plan. *See id.* § 459.303. Alongside these requirements, the legislature has established a master matrix that the Iowa DNR must adopt "to provide a comprehensive assessment mechanism in order to produce a statistically verifiable basis for determining whether to approve or disapprove an

application for the construction" or expansion of a CAFO. *Id.* § 459.305. Likewise, the Iowa DNR has established standards for formed manure storage to contain the manure and its corresponding odor. Iowa Admin. Code r. 567—65.15(14).

Despite these significant statutory and regulatory changes, the analytical framework set forth by the *Gacke* factors, even with its limitations, are still compatible with present conditions. Changes in the regulatory scheme limiting CAFOs would appear to benefit the adjacent landowners, at least in theory. But the fighting issue remains whether section 657.11(2), as applied to the particular facts of the instant case, is constitutional. Neither party has suggested an alternative legal framework to utilize in such cases, and the court is unable to discern a satisfactory alternative standard to apply. Accordingly, district courts presiding over cases of this nature should apply the *Gacke* factors to analyze an as-applied constitutional challenge.

The defendants argue that the practical effect of applying the factors we promulgated in *Gacke* has been to boil down the determination of the constitutionality of section 657.11(2) as applied to the plaintiffs to one question: whether the plaintiffs have sustained a significant hardship due to their proximity to the CAFOs. *See Gacke,* 684 N.W.2d at 178. That is an oversimplification. The crux of any as-applied challenge must by necessity concentrate on the second step of *Gacke,* which involves the three-prong test. *See id.* While it may be true plaintiffs who sue CAFOs for nuisance under section 657.11(2) may demonstrate that they meet the other two *Gacke* factors, the fact that the *Gacke* factors seemingly tilt in favor of the plaintiffs does not render them unsound or unjust. Ultimately, the plaintiffs still must demonstrate that they meet all three prongs of the *Gacke* test. We therefore reaffirm the as-applied three-prong test of *Gacke.*

Additionally, we agree with the defendants that the district court improperly applied the *Gacke* test to this case without making specific factual findings in its ruling that section 657.11(2) is unconstitutional as applied under the inalienable rights clause of the Iowa Constitution. Whether the statutory immunity established in section 657.11(2) is unconstitutional as applied to the plaintiffs is inherently fact-specific. In order for a court to determine whether section 657.11(2) is unconstitutional as applied, plaintiffs must show they (1) "received no particular benefit from the nuisance immunity granted to their neighbors other than that inuring to the public in general[,]" (2) "sustain[ed] significant hardship[,]" and (3) "resided on their property long before any animal operation was commenced" on neighboring land and "had spent considerable sums of money in improvements to their property prior to construction of the defendant's facilities." *Id.* at 178. This proof is dependent upon the genuine issues of material fact of each case.

Here, each of the parties presented genuine issues of material fact at the summary judgment stage that could lend themselves to a jury verdict for the nonmoving party. As we have previously held, "[s]ummary judgment is appropriate if the only conflict concerns the legal consequences of undisputed facts." *Plowman*, 896 N.W.2d at 398 (quoting *Peppmeier*, 708 N.W.2d at 58). That is not the case here.

Our holding in *Dalarna Farms v. Access Energy Coop.*, 792 N.W.2d 656 (Iowa 2010), demonstrates why the *Gacke* factors require a fact-based analysis that generally requires a trial on the merits, or at least an evidentiary pretrial hearing. There we rejected the plaintiff's argument that section 657.1(2) violated Iowa's inalienable rights clause as applied because it was "premature at this [pretrial] juncture." *Id.* at 664. In doing so, we noted this constitutional analysis applying the three-prong *Gacke*

test required the "fact-specific enterprise" of "balancing of interests" that could not be proven in the pretrial phase of litigation. *Id.* We concluded the plaintiff's "allegations have not been proven at this stage of the litigation." *Id.* Consequently, we declined to address the issue "until, as in *Gacke*, a factual basis . . . ha[d] been established." *Id.*

Although it is possible that an as-applied constitutional challenge to section 657.11(2) could be resolved in pretrial litigation, the proper course of action for parties disputing the applicability of section 657.11(2) is to allow the CAFOs to plead section 657.11(2) as an affirmative defense to the claims, if applicable. Correspondingly, the plaintiffs claiming section 657.11(2) is unconstitutional as applied to them must prove the factors set forth in *Gacke*. After the parties have submitted their proof, the court can then determine the constitutionality of section 657.11(2) as applied to particular plaintiffs. While a district court may conduct a pretrial hearing for the specific purpose of determining the as-applied challenge, the plaintiffs can still rely on the exceptions to the immunity under sections 657.11(2)(*a*) and (*b*) if the district court finds the statute is not unconstitutional as applied.

Unlike summarily dismissing such claims through summary judgment, a pretrial hearing, or an appropriate motion after the submission of all the evidence at trial, allows the district court to properly balance the *Gacke* factors with the legislative purpose of the statute to protect and promote animal agriculture in the state. *See* Iowa Code § 657.11(1). Here, the district court erred in granting the plaintiffs' partial motion for summary judgment by declaring section 657.11(2) unconstitutional as applied, and in doing so without the benefit of specific fact-finding.

**E. The Facial Constitutional Challenge to Iowa Code Section 657.11(2).** In addition to their as-applied challenge to section 657.11(2), the plaintiffs claim section 657.11(2) is facially unconstitutional, arguing that the police power does not include "protecting large-scale agricultural interests that have themselves been commonly characterized as a public nuisance or risk." A party who claims a statute is facially unconstitutional "asserts that the statute is void for every purpose and cannot be constitutionally applied to any set of facts." *War Eagle Vill. Apartments*, 775 N.W.2d at 722 (quoting *F.K.*, 630 N.W.2d at 805). Nevertheless, we already held in *Gacke* that the legislative purpose "of promoting animal agriculture in this state" falls "within the police power of the state." *Gacke*, 684 N.W.2d at 178. Today, we affirm this holding.

## IV. Conclusion.

For the aforementioned reasons, we reverse the district court ruling declaring that Iowa Code section 657.11(2) is unconstitutional as applied to the plaintiffs in this case. We remand the case to the district court for further proceedings consistent with this opinion. On remand, the district court must engage in a fact-based analysis by applying the three-prong test set forth in *Gacke.*

**REVERSED AND REMANDED.**

All justices concur except Waterman and Mansfield, JJ., who concur specially.

**WATERMAN**, **Justice (concurring specially).**

I join most of the court's opinion reversing the district court ruling that erroneously concluded Iowa Code section 657.11(2) (2016) is unconstitutional as applied to these plaintiffs. Questions of fact on this record preclude summary judgment for either side on the statutory defense. I write separately because *Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168 (Iowa 2004), is outdated and should no longer control the analysis under the inalienable rights clause of the Iowa Constitution, which reads, "All men and women are, by nature, free and equal, and have certain inalienable rights—among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness." Iowa Const. art. I, § 1. I reach my conclusion for several reasons.

First, a decade after *Gacke*, we unanimously held that the deferential rational-basis test is to be applied for challenges under the inalienable rights clause. *City of Sioux City v. Jacobsma*, 862 N.W.2d 335, 352 (Iowa 2015). In my view, this is the test that should be applied on remand to adjudicate the constitutional challenge to section 657.11(2). In the last century, *Gacke* is the only Iowa case sustaining a constitutional challenge under the inalienable rights clause. *See* Todd E. Pettys, *The Iowa State Constitution* 67–68 (2d ed. 2018) (acknowledging that "[b]ecause the standard of review under Section 1 is highly deferential to government actors, it is far easier to find cases in which Iowa courts have rejected inalienable-rights claims"). *Jacobsma* restores the proper deference to the policy choices of the elected branches.

Second, *Gacke* limited its holding to the specific facts of that case and emphasized that "[w]e express no opinion as to whether [section

657.11(2)] might be constitutionally applied under other circumstances." *Gacke*, 684 N.W.2d at 179. The legal landscape has changed since 2004. The minimum distances between confined animal feeding operations (CAFOs) and neighboring residences have increased substantially since *Gacke* was decided. *Compare* Iowa Code § 459.202 (2016), *with* Iowa Code § 459.202 (2003). And the legislature and Iowa Department of Natural Resources (IDNR) have imposed more stringent regulations on the construction and operation of CAFOs. *See id.* §§ 459.303, .305 (2016); Iowa Admin. Code r. 567—65.15(14). The CAFO loses its statutory defense if it fails to comply with these more stringent state law requirements or those imposed by federal law. *See* Iowa Code § 657.11(2)(*a*).

Third, *Gacke* was wrongly decided. CAFOs may be controversial, but it is not our court's role to second-guess policy choices of the elected branches of government. This appeal does not involve a "takings" claim. It does not present a limit on a landowner's right to recover damages for diminution in value due to a nuisance. The sole issue presented is whether the legislature, subject to the rational-basis test, can pass a law that affects a landowner's ability to recover noneconomic nuisance damages. All other states have passed such right-to-farm laws, and no other state supreme court has held them even partially unconstitutional. To the contrary, other courts have uniformly rejected constitutional challenges to these statutes. *Gacke* stands alone. I would accept the defendants' invitation to revisit *Gacke* and overrule it.

The inalienable rights clause should be read together with the clause that immediately follows it in the Bill of Rights. According to article I, section 2,

> All political power is inherent in the people. Government is
> instituted for the protection, security, and benefit of the

people, and they have the right, at all times, to alter or reform the same, whenever the public good may require it.

Iowa Const. art. I, § 2.  Thirteen years after our constitution was ratified, our court discussed this clause and noted the people "have vested the legislative authority, inherent in them, in the general assembly." *Stewart v. Bd. of Supervisors*, 30 Iowa 9, 18 (1870) (emphasis omitted).  Thus, we concluded,

> [I]t seems clear by logical deduction, and upon the most abundant authority, that this court has no authority to annul an act of the legislature unless it is found to be in clear, palpable and direct conflict with the written constitution.

*Id.* at 18–19; *see also Knorr v. Beardsley*, 240 Iowa 828, 842–44, 38 N.W.2d 236, 244–45 (1949) (discussing *Stewart* and subsequent cases).

We need to be cognizant of the right of Iowans to govern themselves through laws passed by their chosen representatives, a right recognized explicitly in article I, section 2.  *Gacke* failed to consider this provision.

For these reasons, I am unable to fully join the majority opinion.

Mansfield, J., joins this special concurrence.