# IN THE SUPREME COURT OF IOWA

No. 19–0821

Filed March 27, 2020

**MICHAEL MERRILL** and **KAREN JO FRESCOLN,**

    Appellants,

vs.

**VALLEY VIEW SWINE, LLC** and **JBS LIVE PORK, LLC** f/k/a **CARGILL PORK, LLC,**

    Appellees.

---

Appeal from the Iowa District Court for Wapello County, Annette J. Scieszinski, Senior Judge.

Two plaintiffs who voluntarily dismissed their claims appeal a district court order directing them to reimburse the defendants for costs and expenses. **AFFIRMED.**

Benjamin G. Arato, Steven P. Wandro, and Jennifer H. De Kock of Wandro & Associates, PC, Des Moines, for appellants.

William H. Roemerman & Laura M. Williams of Elderkin & Pirnie, PLC, Cedar Rapids, for appellee Valley View Swine, LLC.

Shannon L. Sole and Robert C. Gallup of Faegre Drinker Biddle & Reath LLP, Des Moines, for appellee JBS Live Pork, LLC f/k/a Cargill Pork, LLC.

**MANSFIELD, Justice.**

### I. Introduction.

This case requires us to interpret Iowa Code section 657.11(5), a litigation-cost-shifting provision relating to animal feeding operations:

> If a court determines that a claim is frivolous, a person who brings the claim as part of a losing cause of action against a person who may raise a defense under this section shall be liable to the person against whom the action was brought for all costs and expenses incurred in the defense of the action.

Iowa Code § 657.11(5) (2013).

A group of property owners filed a petition alleging that certain confined animal feeding operations (CAFOs) operated and supported by the defendants constituted a nuisance. Because the plaintiffs had failed to exhaust farm mediation, they had to dismiss their initial lawsuit. The plaintiffs refiled. Later, two of the plaintiffs voluntarily dismissed their claims a second time, resulting in an adjudication against them on the merits. *See* Iowa R. Civ. P. 1.943.

The defendants sued by these two plaintiffs moved for costs and expenses pursuant to Iowa Code section 657.11(5), and the district court granted their motions. The two plaintiffs now appeal. They argue: (1) two voluntary dismissals do not mean they had "a losing cause of action," (2) their claims were not frivolous, and (3) the district court improperly assessed certain costs and expenses. On our review, we hold that these plaintiffs had a losing cause of action, that the district court did not abuse its discretion in finding their claims frivolous, and that the district court's apportionment of costs and expenses was appropriate. Accordingly, we affirm the judgment of the district court.

**II. Facts and Procedural History.**

The underlying litigation has been before us already. *See Honomichl v. Valley View Swine, LLC*, 914 N.W.2d 223 (Iowa 2018). We will not restate all the details. In 2013, after obtaining authorization from the Iowa Department of Natural Resources, Valley View Swine began operating two CAFOs in Wapello County for swine owned by JBS Live Pork. The CAFOs are known as Site 1 and Site 2. Other CAFOs are also in operation or planned in Wapello and Jefferson Counties.

In November 2013, seventy property owners filed suit against Valley View, Valley View's principals, JBS, and several other defendants. The petition alleged claims of negligence and nuisance "based on the odors, pathogens, and flies they alleged stem from the CAFOs, as well as defendants' alleged failure to use prudent management practices to reduce these odors, pathogens, and flies." *Id.* at 228. The plaintiffs included Michael Merrill and Karen Jo Frescoln. All the plaintiffs, however, had to dismiss their original suit without prejudice because they had not complied with the farm mediation requirement. *See* Iowa Code § 657.10.[1]

On April 2, 2014, the plaintiffs, now numbering sixty-nine and having exhausted farm mediation, refiled their action. The district court severed the action into three divisions based upon the allegations against three diverse defendant groups. Division A encompassed the plaintiffs who were suing Valley View, Valley View's principals, and JBS over Site 1 and Site 2. Divisions B and C involved other sets of plaintiffs and defendants. Merrill and Frescoln were plaintiffs in division A.

Merrill lives in Batavia, 2.36 miles from Site 1 and 3.69 miles from Site 2. He was deposed on July 30, 2015, and questioned at length about

---

[1]The plaintiffs' present counsel were not representing them at that time.

odor and other effects resulting from the two CAFOs. He testified that his home has odor problems only when there is a slight breeze out of the southwest up to five miles per hour. He recalled there being odor issues six to twelve times in 2015 through the date of his deposition and eight to sixteen times in 2014. However, Merrill kept an odor calendar from February 2015 through July 2015 that specifically noted only two occasions of odor at his home—on June 1 and July 12. Merrill works as an auto mechanic out of his house. He testified the odor on June 1 caused him to cut short the time he was spending outside working by thirty to forty-five minutes. On July 12, the odor again forced Merrill into the house. Merrill did not specifically investigate where the odors were coming from, but Valley View operates the two closest CAFOs.

Frescoln, who was deposed the day before Merrill, lives in rural Libertyville, 5.65 miles from Site 1 and 6.51 miles from Site 2. Her nuisance claims do not pertain to her actual residence though. Frescoln spends time in Batavia babysitting her grandchildren at a farmhouse that is much closer to Site 1 and Site 2. The farmhouse was formerly owned by Frescoln and her husband but, at all relevant times, was owned by their daughter and son-in-law. The underlying land is owned by Frescoln's husband, who has early-onset Alzheimer's disease.[2] Frescoln does have an ownership interest in several nonhabitable structures on the land: a barn with a concrete floor "that maybe one day will blow down we hope," a storage area consisting of an old railroad car, and a grain bin that is rented out to a farmer.

Frescoln testified that she smells odor almost daily at her daughter and son-in-law's home in Batavia. Her calendar contains approximately

_____

[2]Frescoln testified in her deposition that she was on the deed, but the property records showed she was not.

one or two odor entries per month. The entries reflect times when the odor was at its worst. On many occasions, the odor interfered with activities, such as Frescoln's grandchildren playing outside. Frescoln also noticed an abundance of green flies, which she attributes to the CAFOs. Frescoln testified that the family had to postpone moving cattle onto the farmstead in Batavia because the smells from the CAFOs made it too difficult to be outside installing and repairing fencing. She said she no longer goes camping on that property, although she has not been camping in four years anywhere. It should be noted that Frescoln's husband, daughter, and son-in-law are not plaintiffs in the litigation.

The district court had implemented a "bellwether" procedure whereby selected groups of plaintiffs in divisions A, B, and C of the litigation would have their claims tried first. Merrill and Frescoln were chosen as two of the bellwether plaintiffs in division A. In February 2016, a jury returned a defense verdict in the division C bellwether trial. The division A bellwether trial was scheduled to go forward in August.

On June 7, two months before this scheduled trial, Merrill dismissed his claims voluntarily. Three days later, Valley View and JBS filed a motion for judgment and costs and expenses, including attorney fees, against Merrill pursuant to Iowa Code section 657.11(5) and Iowa Rule of Civil Procedure 1.413(1).

Meanwhile, on June 8, the district court entered a summary judgment ruling striking the defendants' immunity defense on the ground that Iowa Code section 657.11(2) was unconstitutional as applied to the division A plaintiffs.[3] On July 15, this court granted the defendants'

---

[3]Section 657.11(2) provides,

2. An animal feeding operation, as defined in section 459.102, shall not be found to be a public or private nuisance under this chapter or under principles of common law, and the animal feeding operation shall

application for an interlocutory appeal and stayed proceedings. That appeal was resolved nearly two years later when this court, on June 22, 2018, reversed the district court's ruling. *Honomichl*, 914 N.W.2d at 238–39. Yet we explained that the statute could still be found unconstitutional as to the division A plaintiffs if, on "a fact-based analysis," they showed that

> they (1) "received no particular benefit from the nuisance immunity granted to their neighbors other than that inuring to the public in general[,]" (2) "sustain[ed] significant hardship[,]" and (3) "resided on their property long before any animal operation was commenced" on neighboring land and "had spent considerable sums of money in improvements to their property prior to construction of the defendant's facilities."

*Id.* at 237–39 (quoting *Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168, 178 (Iowa 2004)).

On September 24, after procedendo had issued and the case had been returned to the district court, Frescoln voluntarily dismissed her claims. On October 11, Valley View and JBS filed a motion for costs, expenses, and attorney fees as to Frescoln under Iowa Code section 657.11(5) and Iowa Rule of Civil Procedure 1.413(1). Both Merrill

---

not be found to interfere with another person's comfortable use and enjoyment of the person's life or property under any other cause of action. However, this section shall not apply if the person bringing the action proves that an injury to the person or damage to the person's property is proximately caused by either of the following:

    *a.* The failure to comply with a federal statute or regulation or a state statute or rule which applies to the animal feeding operation.

    *b.* Both of the following:

    (1) The animal feeding operation unreasonably and for substantial periods of time interferes with the person's comfortable use and enjoyment of the person's life or property.

    (2) The animal feeding operation failed to use existing prudent generally accepted management practices reasonable for the operation.

Iowa Code § 657.11(2).

and Frescoln resisted the motions, and the district court held a hearing on November 20.

A few weeks later, on December 11, the district court issued its ruling. The court found that Merrill and Frescoln's pleadings were not sanctionable under rule 1.413(1). Turning to Iowa Code section 657.11(5), the court declined to award any attorney fees, reasoning they were not "costs and expenses" within that meaning of that statute. Iowa Code § 657.11(5). The court did, however, reject Merrill and Frescoln's argument that two-time voluntary dismissers did not qualify as having "a losing cause of action." *Id.* The court elaborated,

> The statutory reference [in section 657.11(5)] to "brings the claim as part of a losing cause of action" reasonably embraces other, non-trial situations where a decision on the merits is effected: such outcome could take shape as a summary-judgment dismissal—or, as in this case, a second, voluntary dismissal.

In addition, after summarizing the deposition testimony of Merrill and Frescoln which had been submitted by the parties, the district court found their claims to be "frivolous" as that term is used in Iowa Code section 657.11(5). As to Merrill, the court observed,

> Merrill was unable to tie any of the odor he detected to the subject CAFOs either by his direct experience or circumstantially through other evidence. And, he made no real effort to do so.
>
> . . . .
>
> . . . While he detected swine odor on two identified dates and a handful of unspecified occasions in 2014 and 2015, his experience with odor was negligible.

As to Frescoln, the court noted she did not own either the land or the house at which she had found the odor conditions to be intolerable. The court summed up her situation as follows:

Frescoln's claims in this case are without substance of property ownership, and do not establish soundness in fact when all of the evidence she produces and that she fails to produce, is reconciled.

The court invited Valley View and JBS to quantify their costs and expenses in a supplemental filing. After receiving these filings and Merrill and Frescoln's resistances, the court entered a judgment on April 19, 2019. It awarded $7630.60 against Merrill and $7652.28 against Frescoln in favor of JBS, and $1686.67 against Merrill and $1531.97 against Frescoln in favor of Valley View. In addition to expenses for the depositions of Merrill and Frescoln themselves, these awards included a pro rata share of certain overall defense costs in the division A and the division C litigation, such as expert depositions.

Merrill and Frescoln appealed, and we retained the appeal.

**III.  Standard of Review.**

"We review questions of statutory interpretation for correction of errors at law." *Standard Water Control Sys., Inc. v. Jones*, 938 N.W.2d 651, 656 (Iowa 2020).

We have not previously addressed the standard of review to be applied when a district court finds a claim frivolous under Iowa Code section 657.11(5). *See* Iowa Code § 657.11(5). We believe an abuse-of-discretion standard of review should govern. That is the standard applied to reviews of sanctions under Iowa Rule of Civil Procedure 1.413(1). *See Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009). We also note the wording of section 657.11(5). It states, "If a court *determines* that a claim is frivolous." Iowa Code § 657.11(5) (emphasis added). It does not provide, "If a claim is frivolous . . . ." Arguably, the words chosen by the legislature recognize that the court in the matter has some discretion, or at least has fact-finding authority. *See also Woodland Hills Homeowners*

*Ass'n of Thetford Twp. v. Thetford Twp.*, No. 275315, 2008 WL 2117147, at \*3–4 (Mich. Ct. App. May 20, 2008) (per curiam) (stating that a trial court's decision to award costs and fees to a prevailing defendant under the Michigan Right to Farm Act is reviewed for an abuse of discretion).

**IV. Analysis.**

Again, Iowa Code section 657.11(5) provides,

> If a court determines that a claim is frivolous, a person who brings the claim as part of a losing cause of action against a person who may raise a defense under this section shall be liable to the person against whom the action was brought for all costs and expenses incurred in the defense of the action.

On appeal, Merrill and Frescoln contend that they did not have "a losing cause of action," that their claims were not "frivolous," and that they were charged for amounts that were not "costs and expenses incurred in the defense of the action." *Id.* We will address these arguments in turn.

**A. When a Party Dismisses His or Her Claims Voluntarily a Second Time, Does that Party Have "a Losing Cause of Action"?** Merrill and Frescoln dismissed their claims voluntarily in this case, after having dismissed them voluntarily in a previous case. Iowa Rule of Civil Procedure 1.943 provides that a second voluntary dismissal "shall operate as an adjudication against that party on the merits, unless otherwise ordered by the court, in the interests of justice." Merrill and Frescoln do not dispute they understood their second dismissals would be with prejudice. But they argue they did not have a "losing cause of action" within the meaning of Iowa Code section 657.11(5).

We disagree. A common-sense view would hold that a party who suffers an adverse "adjudication against that party on the merits" is a losing party with a losing cause of action. *Id.*; *see Smith v. Lally*, 379 N.W.2d 914, 916 (Iowa 1986) (affirming summary judgment dismissing

third action after two voluntary dismissals under an identically worded former rule). Further, Iowa precedents allow a party to be recognized as a prevailing party even when the case is resolved through a voluntary dismissal. *See In re Property Seized from Herrera*, 912 N.W.2d 454, 469–73 (Iowa 2018) (finding that a property owner was the prevailing party and could recover attorney fees under Iowa Code section 809A.12(7) when the state voluntarily dismissed its forfeiture action); *In re Marriage of Roerig*, 503 N.W.2d 620, 622 (Iowa Ct. App. 1993) (finding that where a plaintiff dismissed her modification petition on the first day of trial, the defendant was a prevailing party and could recover attorney fees pursuant to Iowa Code section 598.36).

There are policy reasons to favor this interpretation. *See* Iowa Code 4.4(3) ("In enacting a statute, it is presumed that . . . [a] just and reasonable result is intended."). The legislature's goal was "to protect animal agricultural producers who manage their operations according to state and federal requirements from the costs of defending nuisance suits." *Id.* § 657.11(1). That goal could be thwarted if the liability for costs and expenses for bringing a frivolous claim could be avoided simply by entering a voluntary dismissal, especially a second voluntary dismissal that operates as an adjudication on the merits. In *Darrah v. Des Moines General Hospital*, we held that a voluntary dismissal (even a first dismissal) should not deprive the court of jurisdiction to award sanctions under what is now rule 1.413(1), noting, "If the plaintiff can terminate the ability of the court to impose sanctions by a voluntary dismissal, the rule's effectiveness would be significantly undermined." 436 N.W.2d 53, 54 (Iowa 1989). The same logic applies here.

Merrill and Frescoln argue that no "judgment" has been entered, so costs and expenses cannot be awarded. Again, we disagree. Rule 1.951

defines a judgment as "[e]very final adjudication of any of the rights of the parties in an action." Iowa R. Civ. P. 1.951. The second voluntary dismissal thus operates as a judgment and could be pled for res judicata purposes if these plaintiffs attempted to file a third action. *See Smith*, 379 N.W.2d at 916.

Merrill and Frescoln also maintain that the court no longer had jurisdiction over them once they dismissed their claims. They argue that *Darrah* carved out a narrow exception under what is now rule 1.413(1), but Iowa Code section 657.11(5) does not allow for a similar exception. This is simply a reframing, in jurisdictional terms, of Merrill and Frescoln's contention that section 657.11(5) does not apply to voluntary dismissals. We disagree and believe the reasoning of *Darrah* applies just as well here. In that case we said, "In light of the sanction nature of [rule 1.413(1)], we believe the trial court must necessarily retain jurisdiction to rule on motions made shortly after voluntarily dismissal which are based on filings made while the case was still pending." *Darrah*, 436 N.W.2d at 55. So too under section 657.11(5).

**B. Were the Claims of Merrill and Frescoln Frivolous?** We next consider whether the district court abused its discretion in finding the claims of Merrill and Frescoln frivolous. Both asserted claims of temporary nuisance, permanent nuisance, and negligent harm to property against Valley View and JBS.

Iowa defines a nuisance as "[w]hatever is injurious to health, indecent, or unreasonably offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere unreasonably with the comfortable enjoyment of life or property." Iowa Code § 657.1(1). In addition, we have made clear that to overcome the statutory limits on liability in Iowa Code section 657.11(2), a plaintiff must "receive[] no

particular benefit from the nuisance immunity granted to [his or her] neighbors," must sustain "significant hardship," and must have resided on his or her property prior to the construction of the defendant's facilities. *Honomichl*, 914 N.W.2d at 237 (quoting *Gacke*, 684 N.W.2d at 178).

A plaintiff bringing a nuisance action must have some kind of interest in the affected *property*. That is why this court held in 1998 that the nuisance immunity set forth in Iowa Code section 352.11(1)(*a*) amounted to an unconstitutional "taking of private property." *Bormann v. Bd. of Supervisors*, 584 N.W.2d 309, 321 (Iowa 1998). And it was also the rationale of our 2004 decision in *Gacke* holding section 657.11(2) unconstitutional under certain circumstances. As we explained in a key paragraph:

> B. *Existence of protected right.* We first consider whether the Gackes' desire to enjoy their home free from noxious odors is a right protected by article I, section 1 of the Iowa Constitution. This clause states that one of the inalienable rights accorded citizens is "acquiring, possessing and protecting property." Iowa Const. art. I, § 1. Property consists not only of the physical land, but also "the rights of use and enjoyment." *Liddick v. City of Council Bluffs*, 232 Iowa 197, 221–22, 5 N.W.2d 361, 374 (1942); *accord* [*State v.*] *Osborne*, 171 Iowa [678,] 695, 154 N.W. [294,] 301 [1915] ("The first section of our Bill of Rights assures to every man protection in his natural right to acquire, possess, and enjoy property."). Therefore, the plaintiffs' right to possess their property includes their right to use and enjoy it. *See Osborne*, 171 Iowa at 693, 154 N.W. at 300 ("Depriving an owner of property of one of its essential attributes is depriving him of his property within the constitutional provision [article I, section 1].").

*Gacke*, 684 N.W.2d at 177. The Restatement (Second) of Torts takes a similar position:

> For a private nuisance there is liability only to those who have property rights and privileges in respect to the use and enjoyment of the land affected, including
>
> (a) possessors of the land,

(b) owners of easements and profits in the land, and

(c) owners of nonpossessory estates in the land that are detrimentally affected by interferences with its use and enjoyment.

Restatement (Second) of Torts § 821E, at 102–03 (Am. Law Inst. 1979); *see also id.* cmt. *d*, at 104 (indicating that "members of the family of the possessor of a dwelling who occupy it along with him may properly be regarded as sharing occupancy with intent to control the land and hence as possessors").

Applying this law to the facts of this case, we conclude the district court did not abuse its discretion in finding the claims in question frivolous, even though reasonable people could see the matter differently. *See Barnhill*, 765 N.W.2d at 279 ("Admittedly, there is a fine line at times between zealous advocacy and frivolous claims.").

Merrill's home was located 2.36 and 3.69 miles respectively from the CAFOs at issue. His evidence of harm was marginal. Merrill could identify only two times over a six month time period when his "odor calendar" mentioned odor; those are also the only two occasions when odor actually affected his activities. The district court found that Merrill "did not produce evidence of any material impact that his infrequent detection of generalized swine odor imposed on his actual use of his property." The district court also faulted Merrill for having no specific basis for concluding the odors even came from Site 1 and Site 2. Those findings are supported by the record.

Frescoln, meanwhile, described events that a jury *could* find to be significant hardships and an unreasonable interference. *See Honomichl*, 914 N.W.2d at 237; *Gacke*, 684 N.W.2d at 178. Unfortunately, she lacked the legally required connection to the property. The house in question was owned by her daughter and son-in-law; the land was owned by her

husband. Frescoln retained an interest in some utility buildings, but the record does not suggest the CAFOs had any impact on the use or operation of those buildings. Frescoln also spent considerable time on the property as a babysitter for her grandchildren, but she did not reside there.

For these reasons, we conclude the district court did not abuse its discretion in determining that Merrill's and Frescoln's claims were frivolous. Once more, we express some words of caution. The district court commented specifically on the large damages sought by Merrill and Frescoln (up to $750,000 or $100,000 per year). Those amounts may have been exaggerated, but they do not render the underlying claims frivolous.

Likewise, the district court noted that Frescoln had "personally assumed [a] profile as an activist against the confinement production of market hogs—describing the methodology of that industry as 'sinful.'" The court added, "Her litigation purpose is clear: to stop CAFO operation due to the type of operation it is, which is not a legitimate purpose under Iowa nuisance law." However, whether litigation motives are pure or not, a claim is not frivolous unless the claim itself lacks substance. We suspect Valley View and JBS themselves had ulterior motives for filing the present motions. Presumably, their attorney fees to litigate the merits of these motions have far exceeded the $18,501.82 at issue. Yet an award of costs and expenses could have a deterrent effect on other potential plaintiffs. That too is permissible so long as the motions are well-grounded.

**C. Was the District Court's Apportionment of Costs and Expenses Proper?** Finally, even assuming their causes of action were "losing" and their claims were "frivolous" within the meaning of Iowa Code section 657.11(5), Merrill and Frescoln challenge the costs and expenses actually awarded by the district court. They raise two separate points.

First, they contend they should not be charged any share of costs and expenses incurred by the defendants in division C and in a separate Poweshiek County case.[4] The district court made a pro rata assessment under a complicated formula suggested by the defendants, reasoning that those costs and expenses were also necessary to prepare for defense of the division A bellwether claims brought by Merrill, Frescoln, and others. Second, Merrill and Frescoln argue they should not be assessed costs and expenses that do not meet the usual criteria for taxation of costs, such as the limit on expert fees and the requirement that depositions have been used at trial. *See* Iowa Code § 622.72; Iowa R. Civ. P. 1.716.

On the first point, we affirm the district court's determination that "[u]nder the unique circumstances of efficient joinder of CAFO case preparation," the costs and expenses in division C and the Poweshiek County case were also related to defending claims in division A. Discovery was effectively consolidated. Accordingly, at least some portion of division C and Poweshiek County costs and expenses were "incurred in the defense of the action[s]" brought by Merrill and Frescoln. Iowa Code § 657.11(5).[5]

On the second point, we do not share Merrill and Frescoln's view that costs and expenses under Iowa Code section 657.11(5) are limited to

---

[4]Merrill and Frescoln point out that the Poweshiek County case was dismissed on April 5, 2016, with costs assessed to the plaintiffs therein.

[5]Merrill and Frescoln do not challenge the specific proration formula used by the district court. Nor have Merrill and Frescoln argued that Iowa Code section 657.11(5) requires an incremental cost approach. Under an incremental cost approach, the defendants could recover only those costs and fees they would have avoided *but for* Merrill and Frescoln's presence in the litigation. We have said that rule 1.413(1), which is worded somewhat differently, "codifies a 'but for' causation requirement, limiting a fee-based sanction to the fees that would have been avoided but for the improper filings." *First Am. Bank v. Fobian Farms, Inc.*, 906 N.W.2d 736, 751 (Iowa 2018); *see also* Iowa R. Civ. P. 1.413(1) (stating that a sanction "may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing"). We leave for another day whether a similar approach should be followed under section 657.11(5).

taxable costs. The legislature used the phrase "costs and expenses," not "costs." *See id.* Merrill and Frescoln's reading of the statute would render the word "expenses" superfluous, an outcome that is disfavored. *See id.* § 4.4(2) ("In enacting a statute, it is presumed that . . . [t]he entire statute is intended to be effective."). In fact, their reading would render the entire provision superfluous, since taxable costs are already recoverable under Iowa Code sections 625.1 and 625.11. *See id.* §§ 625.1, .11. The district court actually took a fairly narrow view of "expenses"; for example, it declined to award expenses for travel to depositions on the ground that they "are typically billed collaterally with attorney fees."

### V. Conclusion.

For the foregoing reasons, we affirm the district court's judgment.

**AFFIRMED.**

All justices concur except Appel, J., who takes no part.