# IN THE SUPREME COURT OF IOWA

No. 21–1437

Submitted December 14, 2022—Filed February 3, 2023

**GARY KLUENDER, JR.,**

Appellant,

vs.

**PLUM GROVE INVESTMENTS, INC.,**

Appellee.

Appeal from the Iowa District Court for Floyd County, Rustin Davenport, Judge.

A former landowner claims that Iowa's tax-sale statute violates the due process requirements of the Constitution of the United States and the Constitution of the State of Iowa. **AFFIRMED.**

May, J., delivered the opinion of the court, in which all justices joined.

Todd P. Prichard (argued) of Walk, Prichard, Baresel & Murphy, PC, Charles City, for appellant.

James E. Nervig (argued) of Brick Gentry P.C., West Des Moines, for appellee.

**MAY, Justice.**

Gary Kluender claims that Iowa's tax-sale statute violates due process because it doesn't require personal service (which is to say, actual delivery[1]) of a written notice that the taxpayer will lose their land if they don't pay their tax debt within ninety days. We disagree. "Due process does not require that a property owner receive *actual* notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (emphasis added). Rather, due process only requires a method of service that is *reasonably calculated* to provide timely notice. *See id.* Service by mail usually fulfills this requirement. And Iowa's tax-sale statute requires service of ninety-day notices by both regular mail and certified mail. Iowa Code § 447.9 (2017).

Like the district court, we find no due process violation. We affirm.

**I. Background Facts and Proceedings.**

**A. General Background.** Tax sales are governed by Iowa Code chapters 446–448. The Code requires that on the third Monday in June the county treasurer must "offer at public sale" all parcels of land "on which taxes are delinquent." Iowa Code § 446.7(1). Over a month before the sale occurs ("May 1"), the treasurer must give delinquent taxpayers notice of the planned sale "by regular first class mail" to their "last known address." *Id.* § 446.9(1).

---

[1]The classic form of personal service is actual delivery to the person served. *See, e.g.*, Iowa R. Civ. P. 1.305 ("Original notices are 'served' by delivering a copy to the proper person."); *Personal Service, Black's Law Dictionary* 1381 (11th ed. 2019) ("Actual delivery of the notice or process to the person to whom it is directed."). To be clear, though, our rules of civil procedure also permit additional methods of personal service. Iowa R. Civ. P. 1.305(1)–(14).

At the tax sale, each parcel must be sold "for the total amount of taxes, interest, fees, and costs due." *Id.* § 446.7(1). In return for this payment, a purchaser receives a "certificate of purchase" from the county treasurer. *Id.* § 446.29. Then the treasurer must notify the delinquent taxpayer "by regular mail" that their "parcel was sold at tax sale." *Id.* § 446.2; *see also id.* (requiring the notice to be sent "within fifteen days from the date" of the sale).

Note, though, that the "certificate of purchase" does not actually transfer ownership of the parcel. Rather, the certificate amounts to "an inchoate right or lien." *Dohrn v. Mooring Tax Asset Grp., L.L.C.,* 743 N.W.2d 857, 860 (Iowa 2008); *see* Iowa Code § 446.29. Even after the tax sale is done and a certificate of purchase has been issued, the property owner still "has two years to redeem the property by paying the county treasurer the amount for which the property was sold as well as the amount of any taxes the certificate holder may have paid for subsequent years plus two percent per month interest." *Dohrn,* 743 N.W.2d at 860 (citing Iowa Code § 447.1). But if the property is not redeemed within this period, the certificate holder may be entitled to a tax deed. *Id.* (citing Iowa Code § 448.1).

No tax deed can be issued, though, unless the certificate holder has complied with Iowa Code section 447.9. *Dohrn,* 743 N.W.2d at 860. It states that

> [a]fter one year and nine months from the date of sale, . . . *the holder of the certificate of purchase may cause to be served* upon the person in possession of the parcel, and also upon the person in whose name the parcel is taxed, *a notice* signed by the certificate holder or the certificate holder's agent or attorney, *stating* the date of sale, the description of the parcel sold, the name of the purchaser, and *that the right of redemption will expire and a deed for the parcel be made*

*unless redemption is made within ninety days from the completed service of the notice.*

Iowa Code § 447.9(1) (emphasis added).

Section 447.9 goes on to specify that this ninety-day "notice shall be served by both regular mail and certified mail to the person's last known address and such service is deemed completed when the notice is deposited in the mail and postmarked for delivery." *Id.*

Once service is complete, the final ninety-day period for redemption begins. *Id.* § 447.12. When those ninety days have passed, the county treasurer must issue a tax deed upon the return of the certificate of purchase. *Id.* § 448.1. When that deed is properly recorded, it "vests[s] in the purchaser all the right, title, interest, and claim of the state and county to the parcel," as well as "all the right, title, interest, and estate of the former owner." *Id.* § 448.3(1).

**B. Kluender and Plum Grove.** We turn now to the facts of this case. In January 2004, Gary Kluender obtained a parcel of farm land in Floyd County (the parcel). Kluender was responsible for paying the property taxes. He received bills in September and then paid them in the spring.

But then Kluender went through a time of financial difficulty. His house was damaged by fire but he could not rebuild it. He had "a hard time paying things." He stopped paying the property taxes on the parcel. He admits receiving "a few notices of tax delinquency."

On June 19, 2017, the parcel was sold at tax sale. Plum Grove paid Kluender's overdue taxes plus interest and costs. In return, Plum Grove received a certificate of purchase.

Time went by. Kluender did not redeem the parcel.

On April 14, 2020, Plum Grove complied with section 447.9 by sending the required ninety-day notice to Kluender. More specifically, Plum Grove sent the notice by regular mail and certified mail both to the parcel itself and to Kluender's last known address, his house in Ionia. Although the Ionia house had been damaged by fire, Kluender admits that he was still receiving mail there. But Kluender did not pick up the certified letter that Plum Grove sent there. It was returned as undeliverable. It appears undisputed, though, that Plum Grove's regular mail letters *were not* returned as undeliverable.

In the ninety days that followed, Kluender took no action to redeem the parcel. So, on August 11, 2020, the county treasurer issued a tax sale deed to Plum Grove. Through this deed, Plum Grove received all of Kluender's interest in the parcel. *See* Iowa Code § 448.3(1).

Also in August, Plum Grove sent Kluender a written demand to vacate the parcel. It was sent to the Ionia house. Kluender admits that he received this demand.

In November, Kluender commenced this action. Kluender claimed that he did not receive actual notice of the tax-sale proceedings until August 2020, when Plum Grove sent him a written demand to vacate the parcel. Kluender also claimed that "Iowa Code [section] 447 violates the Federal and State Constitution [guarantees] of due process in that it does not require effective notice."

Kluender and Plum Grove filed cross-motions for summary judgment. The sole issue before the court was whether Iowa Code section 447.9 is

unconstitutional because it does not require personal service. The court answered that question in the negative, denied Kluender's motion, and granted Plum Grove's motion. Kluender appeals.

**II. Analysis.**

On appeal, Kluender again argues that Iowa Code section 447.9 "violates the due process clause of the US and Iowa Constitutions" because it does not require personal service of the ninety-day notice. We review his challenge de novo. *PSFS 3 Corp. v. Michael P. Seidman, D.D.S., P.C.*, 962 N.W.2d 810, 832 (Iowa 2021).

The Fourteenth Amendment to the United States Constitution prohibits "any State" from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Similarly, article I, section 9 of the Iowa Constitution states that "no person shall be deprived of life, liberty, or property, without due process of law."[2] Iowa Const. art. I, § 9. It is certainly true, then, that Kluender's property rights in the parcel were constitutionally protected. They could not be extinguished "without due process of law." Our task is to decide what process was due.

We begin by recognizing that there are two distinct kinds of due process claims: facial and as-applied.[3] *Bonilla v. Iowa Bd. of Parole*, 930 N.W.2d 751, 764

---

[2]The parties draw no clear lines between the protections offered by the two constitutions. For purposes of this case, we assume they provide the same protections.

[3]Some cases recognize another distinction: procedural due process and substantive due process. We understand Kluender's arguments to be about procedural due process, namely, that the procedure required by section 447.9 is insufficient. Although one of his headings mentions "substantive due process," he does not develop a substantive due process argument.

(Iowa 2019). In an as-applied challenge, the challenger claims that a statute is unconstitutional "as applied to a particular set of facts." *Id.* (quoting *Honomichl v. Valley View Swine, LLC*, 914 N.W.2d 223, 231 (Iowa 2018), *overruled by Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67 (Iowa 2022)). Conversely, in a facial challenge, the challenger must prove that a statute is "totally invalid and therefore, 'incapable of *any valid application.*' " *Id.* at 766 (quoting *Santi v. Santi*, 633 N.W.2d 312, 316 (Iowa 2001)). A facial challenge is the "most difficult" to " ' "mount successfully" because it requires the challenger to show [that] the statute under scrutiny is unconstitutional *in all its applications.*' " *Id.* (quoting *Honomichl*, 914 N.W.2d at 231). "Facial challenges are disfavored for several reasons." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).

> Claims of facial invalidity often rest on speculation. . . . Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither "anticipate a question of constitutional law in advance of the necessity of deciding it" nor "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied."

*Id.* (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring)).

In this case, Kluender asserts a facial challenge.[4] He claims that section 447.9 is "unconstitutional on its face" because "personal notice . . . informing a delinquent taxpayer of their right to redeem a tax certificate" is "never required." The statute's mailing requirements are "so ineffective in protecting" property

---

[4]Kluender's opening brief makes it clear that he is attacking section 447.9 "on its face." At oral argument, Kluender verified that he was asserting a facial challenge.

rights, Kluender contends, "that there is no factual situation in which they are constitutionally adequate." As support, Kluender relies on *Mathews v. Eldridge*, 424 U.S. 319 (1976). In *Mathews*, the United States Supreme Court said "that identification of the specific dictates of due process generally requires consideration" of three factors: (1) the private interests at stake; (2) the risk that the procedures used will result in an "erroneous deprivation" of those interests; and (3) the government's interests, including any "burdens that the additional or substitute procedural requirement would entail." *Id.* at 334–35. Applying these factors here, Kluender notes that (1) tax sales involve important interests, namely, private interests in real estate; (2) service by mail entails risk that the landowner won't receive actual notice; and (3) conversely, actual notice could be guaranteed by requiring personal service, an alternative that Kluender says "is not difficult or expensive" or burdensome for "the tax sale system or . . . the certificate holder." In Kluender's view, then, the *Mathews* factors show that section 447.9 violates due process by allowing service by mail instead of requiring personal service or—at a minimum—proof that notice was actually received.

We view the matter differently. For starters, we do not believe that the *Mathews* test governs here. It "was first conceived in the context of a due process challenge to the adequacy of administrative procedures used to terminate Social Security disability benefits." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). But the Supreme Court has never "viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Id.* at 168. And when the

Court has been "confronted with questions regarding the adequacy of [a] method used to give notice," the Court has "regularly turned to" a different test that was announced in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). *Dunsenbery*, 534 U.S. at 168. Indeed, the Court has said that—in those kinds of cases—application of the *Mullane* framework is a "well-settled practice." *Id.*

So we apply the *Mullane* framework here. We start from the premise that "[d]ue process does not require that a property owner receive actual notice before the government may" dispose of real property. *Jones*, 547 U.S. at 226. Rather, under the *Mullane* framework, governments must only require "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane*, 339 U.S. at 314). And the Supreme Court has approved the use of mail service to fulfill this obligation. *Id.* (citing cases). As Justice O'Connor summarized: "We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988) (citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799–800 (1983); *Greene v. Lindsey*, 456 U.S. 444, 455 (1982); *Mullane*, 339 U.S. at 319).

In light of these principles, we do not believe Kluender's facial challenge can succeed. Section 447.9 requires certificate holders to send the ninety-day notice to the landowner's last known address by both regular mail and certified mail. Iowa Code § 447.9. This combination of mailings is reasonably calculated to provide the landowner with actual notice of the ninety-day period and,

therefore, an opportunity to timely respond. This satisfies due process. *See Tsann Kuen Enters. Co. v. Campbell*, 129 S.W.3d 822, 832 (Ark. 2003) (holding tax sale statute that requires notice by certified mail "fulfills constitutional due process requirements and provides sufficient notice"); *Ind. Land Tr. Co. v. XL Inv. Props., LLC*, 155 N.E.3d 1177, 1189 (Ind. 2020) (finding tax sale statute that requires notice by certified mail and first-class mail constitutional); *HBI, L.L.C. v. Barnette*, 941 N.W.2d 158, 169–70 (Neb. 2020) (finding tax sale statute that requires notice by certified mail constitutional).

But Kluender argues that a different result is required by *War Eagle Village Apartments v. Plummer*, 775 N.W.2d 714 (Iowa 2009). In *War Eagle*, we concluded that Iowa's forcible entry and detainer (FED) statutes violated due process because they did not require service that was reasonably calculated to provide tenants with timely notice of eviction hearings. *Id.* at 719–22. As Kluender emphasizes, our conclusion in *War Eagle* was partially based on the fact that the FED statutes allowed service by certified mail rather than personal service. *See id.*

But nothing in *War Eagle* suggests that personal service is the only constitutional option. Also, there are important differences between the FED system addressed in *War Eagle* and the tax-sale system before us here. For one thing, section 447.9 requires *not only* service by certified mail *but also* service by regular mail. Iowa Code § 447.9. Surely, the addition of a regular-mail requirement increases the probability of actual delivery by some appreciable

degree. Indeed, as the Supreme Court has recognized, regular mail is sometimes more effective than certified mail:

> [T]he use of certified mail [instead of regular mail] might make actual notice less likely in some cases—the letter cannot be left like regular mail to be examined at the end of the day, and it can only be retrieved from the post office for a specified period of time. Following up [certified mail] with regular mail might also increase the chances of actual notice to [the person served] if . . . he had moved. Even occupants who ignored certified mail notice slips addressed to the owner (if any had been left) might scrawl the owner's new address on the notice packet and leave it for the postman to retrieve, or notify [the person] directly.

*Jones*, 547 U.S. at 235.

Moreover, the time frames at issue here are far different from those in *War Eagle*. In *War Eagle*, the court considered an FED statute that (1) required eviction hearings to "be set not later than seven days from the date of the order scheduling the hearing," (2) allowed the landlord to serve the tenant "not less than three days prior to the hearing," and (3) allowed service to occur by certified mail alone, with notice deemed "received by the tenant when it is mailed." 775 N.W.2d at 718. This combination of features made it highly unlikely that a tenant would receive notice prior to the hearing—much less that the tenant would receive notice "in time to meaningfully participate in the hearing." *Id.* at 721. It was not reasonably calculated to give tenants notice and opportunity to be heard.

Section 447.9 is different. As noted, section 447.9 requires not only certified mail but also regular mail. Much more importantly, perhaps, section 447.9 allows the landowner *ninety* days from the date of those mailings in which to act. Iowa Code § 447.9. Compare this with the statutes in *War Eagle*, which allowed a landlord to serve notice simply by depositing a certified letter "not less

than *three* days prior to the hearing." 775 N.W.2d at 718 (emphasis added). Applying simple math, we see that section 447.9 provides landowners with far more opportunity—an additional *eighty-seven* days of opportunity—to receive notice and take responsive action.

All things considered, then, we believe that *War Eagle* is properly distinguished and, more broadly, that Kluender has failed to show that section 447.9 is facially invalid. *See Nicholson v. HF05*, No. 08–1418, 2009 WL 4842472, at *3–4 (Iowa Ct. App. Dec. 17, 2009) (distinguishing *War Eagle* and rejecting constitutional challenge to section 447.9). We also believe that in this particular case, Kluender received due process. It is undisputed that Plum Grove complied with section 447.9 by sending the ninety-day notice to Kluender's last known address—and to the parcel itself—both by certified and regular mail. Although the house at Kluender's last known address had been damaged by fire, Kluender still received his mail there. Indeed, after the tax sale deed was issued, Plum Grove sent an eviction notice to that address—and Kluender received it there.

Note also that this is not a situation in which all of Plum Grove's mailings were returned undelivered. If that had occurred, due process may well have required Plum Grove to take additional steps. *See Jones*, 547 U.S. at 225 ("We hold that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so."). Here, though, it

appears undisputed that—although a certified mail notice was returned[5]—the regular mail notices were not. Under these facts, Plum Grove was entitled to assume that the United States Postal Service had done its job by delivering the ninety-day notice to Kluender via regular mail. Due process required nothing more. *Nicholson*, 2009 WL 4842472, at *3–4 ("Because HF05 used two notification methods calculated to apprise Nicholson of her redemption rights and learned that only one of them failed, due process did not require it to take additional steps to notify Nicholson.").

### III. Conclusion.

Kluender has not shown a due process violation. We affirm.

**AFFIRMED.**

---

[5]The record is not clear about what happened to the certified-mail notice that was sent to the parcel. Even if it had been returned to Plum Grove, however, the outcome here would not change. Because the regular mail notices were not returned, Plum Grove was entitled to assume that they were delivered.